(88 South. 791)

No. 23821.

### SUCCESSION OF WILLIAMS.

(Nov. 3, 1920. On the Merits, May 30, 1921.)

*(Syllabus by Editorial Staff.)*

1. **Appeal and error ⬅780(2)—Appeal cannot be dismissed as to heirs who disclaimed interest in share in controversy.**

An appeal in a suit by heirs for their interests in a decedent's estate and for partition, which involved a controversy as to a one-third share in the estate, cannot be dismissed as to appellees, who disclaimed any interest in the share in controversy, if they were necessary parties to a determination of the question of law involved.

2. **Appeal and error ⬅811—Suit for possession of interest in decedent's estate and for partition is entitled to preference.**

An appeal in a suit by some of the heirs of the decedent's estate to recover possession of their interests and for partition is one which is entitled to preference, and may be advanced for argument under Court Rule 10, § 3 (136 La. x, 67 So. ix).

### On the Merits.

3. **Absentees ⬅6—Heirs of an heir who had disappeared and was not known to be dead cannot be put into unconditional possession.**

In a suit to recover possession of interests in a decedent's estate, the children and sole heirs of an heir of decedent who had disappeared nine years before decedent's death and had not since been heard from, who could not prove that the absent heir was dead, are not entitled to unconditional possession of his share of the estate, but are limited to provisional possession with security under the terms of Civ. Code, art. 57.

4. **Absentees ⬅6—Statute for conditional possession of interest of absent person applies to interest inherited after his disappearance.**

Civ. Code, art. 57, authorizing the court to put the presumptive heirs of a person who had been absent for five years into conditional possession of the estate which belonged to the absentee at the time of his departure, authorizes the presumptive heirs of such absentee to be put into provisional possession of the absentee's interest in the estate of his father who died after the absentee's disappearance.

5. **Absentees ⬅6—Statute requiring claimant to prove existence of person through whom right accrued does not apply to heirs of disappeared person.**

Civ. Code, art. 76, requiring a claimant of a right accruing to a person whose existence is not known to prove that such person existed at the time when the right accrued, applies only where the right is claimed by virtue of the existence of the person at the time it accrued, and does not apply to a claim, by the heirs of a person who had disappeared, to the interest of such absentee in the estate of his father, who died after the absentee's departure, since such claimants were entitled to possession absolutely if the absentee died before his father, or had died since, and were entitled to provisional possession if he were still alive.

6. **Absentees ⬅6—Statute relating to succession of person whose existence is not known does not apply against his children.**

Civ. Code, art. 77, providing that in case a succession shall be opened in favor of a person whose existence is not known the inheritance shall devolve exclusively on those who would have had a concurrent right with him to the estate, or on those on whom the inheritance should have devolved if such person had not existed, means that the right shall devolve upon

those who would have inherited jointly with the absentee if it were known that he existed, and who would have inherited by right of accretion his share of the succession if it were known that he did not exist when the right of inheritance occurred, and does not give to the brothers of an absent heir the absentee's interest in their father's estate to the exclusion of the children of the absentee, who would be entitled to the absentee's share whether he died before or after the right of inheritance occurred.

**7. Absentees ⬦6—Brother of absent heir cannot claim to exclusion of children without proof of absentee's surviving the ancestor.**

Even if Civ. Code, art. 77, be construed to give to the brothers of an absent heir the interest of the absentee in their father's estate to the exclusion of the absentee's children, the brothers are precluded by article 76 from making a claim to such interest without proof that the absentee was living when the right of inheritance occurred.

**8. Absentees ⬦6—Statute authorizing provisional possession by heirs of absentee applies to absentee whose existence was not known.**

Civ. Code, art. 57, allowing presumptive heirs to take provisional possession of the estate of an absentee on proof that he has not been heard of for 5 years, applies, in view of the title and chapter headings in which it is found, to the case of an absentee whose existence is not known.

Appeal from Twentieth Judicial District Court, Parish of Terrebonne; Philip H. Gilbert, Judge.

In the matter of the Succession of George Williams. Suit by Robert J. Williams and others against George Williams, Jr., and others, for possession of their interest in the estate of decedent and for partition, in which Mrs. Robert Collins and another intervened, claiming an interest. From a judgment placing the interveners in provisional possession of the interest claimed, the named defendant and the interveners appeal. Motion by appellees to dismiss appeal as to them denied. Motion to advance the case granted, and judgment affirmed.

J. Zach Spearing, of New Orleans, for appellant George Williams.

Hugh S. Suthon, of New Orleans, and Butler & Wurzlow, of Houma, for interveners.

On Motion to Dismiss or Advance.

DAWKINS, J. This is a contest between Geo. Williams, Jr., and the children of his two brothers, Dan and Fred Williams, over the estate of his father and their grandfather, Geo. Williams, Sr., deceased. It appears that Dan Williams disappeared several years ago, has not been heard from since, and his children are claiming his interest in their grandfather's property; while Geo. Williams Jr., contends that because Dan Williams' death has not been proven so as to entitle his children to inherit by representation, his interest should go to him (Geo. Williams, Jr.), and the children of Fred who is dead. The heirs of Fred Williams have appeared by motion in this court and alleged that they claim no interest in the share of Dan Williams, but merely the rights of their father, and for this reason there is no controversy between them and any one else in the litigation. They pray that the appeal be dismissed as to them, and, in the alternative, that the cause be advanced as a preference matter.

[1] The judgment of the lower court recognized Geo. Williams, Jr., and the children of Fred Williams, deceased, and the absentee, Dan Williams, as the owners of a one-third interest each in the succession, directed a partition, and that the children of said Dan Williams be placed in provisional possession of his interest. George Williams, Jr., has appealed, and all of the other parties to the litigation are necessarily made appellees.

No authority has been cited in support of the proposition that these appellees can be dismissed from the appeal, and we know of none. It is true that they have by this motion renounced any interest in the rights of their uncle, Dan Williams, but the question is one of law, to a determination of

which we think they are necessary parties. They are not before this court of their own choice, but have been brought here by the appeal of their uncle, and must remain until the issue to which they are necessary in the capacity of appellees has been determined.

[2] However, the case is a preference one, and should be advanced. Rule 10, § 3.

It is therefore ordered, adjudged, and decreed that the motion to dismiss be and is hereby denied, and this case is ordered advanced and placed upon the preference docket, as provided by law and the rules of this court, upon appellees filing and serving their brief in compliance with said rule.

### On the Merits.

O'NIELL, J. George Williams died on the 22d of June, 1917. His wife had died several years before. They had had three children, namely: (1) George Williams, Jr., who survived his father; (2) Frederick Williams, who had died, leaving a widow and six children, three of them being minors; and (3) Daniel Williams, who had disappeared from his home in New Orleans on the 5th of June, 1908, leaving a wife and two daughters, Mrs. Robert Collins and Mrs. Frederick R. Dubret. Daniel Williams has not been seen nor heard from by any of his relations since he disappeared, and, although they have been diligent and anxious in their efforts to locate him or ascertain his fate, they do not know whether he is dead or alive.

George Williams, Sr., left an estate worth approximately $40,000, consisting of real estate in the parishes of Orleans, St. Bernard, St. Mary and Terrebonne. He left a will, disposing of several special legacies and appointing his son, George, executor. The major part of the estate was not disposed of by the will. It was admitted to probate, and in May, 1918, the executor filed an account of his administration, showing debts and special legacies amounting, approximately, to $8,000. Several items on the account were contested by some of the heirs, and the contests were disposed of by final judgment. All of the special legacies and the debts which were approved by the judgment of the court have been paid by the executor, and there is now no contest in that respect.

In August, 1919, the two grown sons and daughter of the deceased Frederick Williams, namely, Robert J. Williams, Earl Williams and Miss Elizabeth Williams, sued for possession of their interest in the estate of their deceased grandfather, George Williams, and for a partition of the estate. George Williams, Jr., was cited individually and as testamentary executor. The three minor children of the deceased Frederick Williams were cited through their mother and natural tutrix, the widow of Frederick Williams. A curator ad hoc was appointed to represent the absentee, Daniel Williams, who had not been heard from for ten years. Mrs. Collins and Mrs. Dubret filed a petition of intervention in the suit, alleging that their father, Daniel Williams, had disappeared and had not been heard from during the past ten years, and that they, his presumptive heirs, were entitled to be sent into possession of the share inherited by or through him from his deceased father, George Williams. They alleged that they believed that their father was dead. They prayed, therefore, to be sent into possession of their father's share of the estate unconditionally, as owners, and, in the alternative, that is, in the event of their being unable to prove their father's death, that, as his presumptive heirs, they should be sent into provisional possession of his share of the estate, on giving security for their faithful administration. In answer to the petition of the plaintiffs and the petition of intervention, George Williams, Jr., individually and as testamentary executor, contended that, as Daniel Williams was a per-

son whose existence was not known, the inheritance which would otherwise have gone to him should devolve exclusively on him, George Williams, Jr., and the children of the deceased Frederick Williams, in the proportion of half to him (George Williams) and half to the children of the deceased Frederick Williams, because they (George Williams, Jr., and the children of the deceased Frederick Williams) were the persons who would have had a concurrent right of inheritance with Daniel Williams if he had been known to be alive when his father died. The children of the deceased Frederick Williams did not contest the demand of the interveners, Mrs. Collins and Mrs. Dubret, to be sent into possession of their father's share of the estate of their deceased grandfather. Judgment was rendered in favor of the interveners, Mrs. Collins and Mrs. Dubret, placing them in provisional possession of one-third of the estate of their deceased grandfather, upon their furnishing bond for an amount fixed by the judge for their faithful administration. George Williams, Jr., individually and as testamentary executor, has appealed from the judgment. Mrs. Collins and Mrs. Dubret have also appealed, and, in answer to the appeal of George Williams, Jr., they pray that the judgment in their favor be amended so as to give them unconditional possession, as owners, of the third of the estate of their deceased grandfather.

[3] The appeal of Mrs. Collins and Mrs. Dubret and their answer to the appeal of George Williams may be disposed of by the statement that they are not able to prove that their father, Daniel Williams, is dead. Their right of possession of his estate is therefore not unconditional or as owners, but is limited by the terms of article 57 of the Civil Code, viz.:

"When a person shall not have appeared at the place of his domicile or habitual residence, and when such person shall not have been heard of, for five years, his presumptive heirs may, by producing proof of the fact, cause themselves to be put by the competent judge into provisional possession of the estate which belonged to the absentee at the time of his departure, or at the time he was heard of last, on condition of their giving security for their administration."

[4] It is contended on behalf of the appellant George Williams that, inasmuch as the article quoted mentions only "the estate which belonged to the absentee at the time of his departure, or at the time he was heard of last," therefore it does not apply to an estate inherited by the absentee after the last time that he was heard of, or was known to be alive. Our opinion, to the contrary, is that the reason why the law mentions only "the estate which belonged to the absentee at the time of his departure or at the time he was last heard of" is that the property or estate thus described is the only property that is known to have belonged to the absentee. As to an inheritance or other right accruing subsequent to the time when an absentee was last heard of, it is not known whether such right or inheritance did or did not devolve upon him, because it is not known whether he was alive when the right accrued. That is explained in article 76, which we will discuss hereafter. If the presumptive heirs, claiming possession of an estate that has been inherited subsequent to the time when their absent ancestor was last heard of, are his descendants, forced heirs, they are entitled at least to the provisional possession of his estate, because, if it should afterwards develop that the absentee was dead, his descendants, forced heirs, would be the owners of the estate by inheritance, either from him or by representation of him.

The appeal of George Williams rests upon his interpretation of articles 76 and 77 of the Civil Code, viz.:

"Art. 76. Whoever shall claim a right accruing to a person whose existence is not known

shall be bound to prove that such person existed at the time when the right in question accrued, and until this be proved, his demand shall not be admitted.

"Art. 77. In case a succession shall be opened in favor of a person whose existence is not known, such inheritance shall devolve exclusively on those who would have had a concurrent right with him to the estate, or on those on whom the inheritance should have devolved if such person had not existed."

This court has not heretofore had occasion to decide whether articles 76 and 77 of the Code are applicable to a case where the claims of those who would have a concurrent right with the absentee, if he were known to be alive, come in conflict with the claims of descendants, forced heirs, of the absentee, who has not been heard of for more than five years and whose existence is therefore not known. That is the case before us; and our opinion is that the articles 76 and 77 of the Code are not applicable. If they were applicable, they would be in conflict with article 57, which confers upon the presumptive heirs of an absentee the absolute right to be placed in provisional possession of his estate, upon proving that he has been absent from the place of his domicile or habitual residence continuously, and has not been heard of, for five years.

[5] The language of article 76, "whoever shall claim a right accruing to a person whose existence is not known," means whoever shall claim a right by virtue of its having accrued to the person whose existence is not known. Such a claimant must prove that the absentee, from whom he claims to have acquired the right, was alive at the time when the right would have accrued to the absentee if then alive. To illustrate: If, in this case, the absentee, whose existence is not known, were the only child of a predeceased son of the deceased George Williams, and if the claimant of the right supposed to have accrued to the absentee were his or her mother, she would have to prove that

her child "existed at the time when the right in question accrued," that is to say, at the time when the grandfather died, because, although the grandchild would inherit by representation of his or her father (R. C. C. 895), the mother could not inherit by representation of her child (R. C. C. 896).

Mrs. Collins and Mrs. Dubret are not relying, for the right which they claim, upon its having accrued to their father, whose existence is not known. Therefore they are not, by the terms of article 76, "bound to prove that such person existed at the time when the right in question accrued," i. e., when their grandfather died. Their right to the provisional possession of their father's estate does not depend upon whether he is dead or alive; and, if it should ultimately develop that he is dead, their right of inheritance of his share of his father's estate could not be affected by the question whether their father or his father died first. If Daniel Williams is alive, Mrs. Collins and Mrs. Dubret, being his nearest relations, are his presumptive heirs. R. C. C. art. 880. If he has died since his father died, Mrs. Collins and Mrs. Dubret have inherited from him what he inherited from his father. If he died before his father died, Mrs. Collins and Mrs. Dubret have inherited, by representation of their father, what he would have inherited if he had survived his father. There is therefore no possible presumption as to the existence or fate of Daniel Williams, by which his daughters would not be entitled to either the provisional or the unconditional possession of his estate.

[6] An analysis of the language of article 77 also convinces us that it is not applicable to a case where the persons who claim that they "would have had a concurrent right with him," whose existence is not known, come in conflict with descendants, forced heirs, of the person whose existence is not known. Article 77 applies only to a right of

inheritance. Article 76, on the contrary, applies to any right which is claimed to have accrued "to a person whose existence is not known."

The simplest and plainest reason why article 77 is not applicable to a case where the provisional possession of the property of a succession, "opened in favor of a person whose existence is not known," is claimed by his descendants, forced heirs, is that if it were applicable to such a case, it would, in every instance, shut out the claims of such presumptive heirs. That is because the descendants, forced heirs, cannot possibly be in the class of "those who would have had a concurrent right with" their ancestor, or in the class of "those on whom the inheritance should have devolved if such person had not existed." If such person had never existed, there would be no descendants of him.

The expression "such inheritance shall devolve exclusively upon those who would have had a concurrent right with him to the estate, or on those on whom the inheritance should have devolved if such person had not existed," means that the inheritance, "opened in favor of a person whose existence is not known," shall devolve upon those who would have inherited jointly with him if it were known that he existed when the right of inheritance occurred, and who would have inherited, by right of accretion, his share of the succession, if it were known that he did not exist when the right of inheritance occurred. George Williams and the children of the deceased Frederick Williams would be in that class if there were no forced heirs of Daniel Williams. The word "concurrent," in the expression in article 77 of the Revised Code "those who would have had a concurrent right with him," was substituted for the word "joint," in revising the Code of 1825; the expression there being "those who would have had a joint right with him." The expression "joint right," as there used, means the right to inherit or receive conjointly with a person if he be alive when the right accrues, and to have the benefit of his share by accretion if he be dead when the right accrues. That is explained in articles 1707 and 1708 of the Code, viz.:

"Art. 1707. Accretion takes place for the benefit of the legatees, in case of the legacy being made to several conjointly.

"The legacy shall be reputed to be made conjointly when it is made by one and the same disposition without the testator's having assigned the part of such [each] colegatee in the thing bequeathed.

"Art. 1708. It shall also be reputed to be made conjointly when a thing not susceptible of being divided without deterioration has been given by the same act to several persons, even separately."

The right of accretion in intestate successions is likewise discussed in articles 1022 to 1028, inclusive.

[7] It must be conceded, of course, that wherever we find a difference between the language of an article of the Civil Code of 1825 and the language of an otherwise corresponding article of the Revised Civil Code of 1870, the language of the article of the latter Code must prevail. That is because the statute adopting the Code of 1870 declares it to be an amendment and re-enactment of the Civil Code of Louisiana. If, therefore, we should assume that the substitution of the expression "concurrent right," in the revision of 1870, for the expression "joint right," which appeared in the otherwise corresponding article (78) of the Code of 1825, was made deliberately and advisedly, it might be assumed that the purpose of the change was to do away with the implication of the right of accretion, which appears so plainly to have been signified by the word "joint," or "conjoint," in the Code of 1825. However, if we should take that view of the language of the Revised Code, and if we should therefore assume that the expression "those who would have had a con-

current right with him," the "person whose existence is not known," does not necessarily mean those who would enjoy the right of accretion, we would nevertheless conclude that article 76 of the Revised Code stands in the way of the appellant George Williams, who claims that he would have had a concurrent right with the person whose existence is not known. The only condition or circumstance under which he and the children of his deceased brother, Frederick, would have had a concurrent right with Daniel Williams, whose existence is not known, that is, the only condition or circumstance under which they would have inherited concurrently with the absentee, would be that the absentee survived his father. In other words, the appellant George Williams is claiming a right by virtue of its having accrued to a person whose existence is not known. It is only upon the presumption that the right accrued to the person whose existence is not known that the appellant George Williams and the children of his deceased brother, Frederick, would have had a concurrent right with him to the estate. The appellant George Williams therefore is in the situation described in article 76 of the Code, "whoever shall claim a right accruing to a person whose existence is not known"; hence he shall be bound to prove that such person existed at the time when the right in question accrued. Mrs. Collins and Mrs. Dubret, the presumptive heirs of the person whose existence is not known, are not bound to prove that he was alive at the time when the right in question accrued, because they are not claiming that the right accrued to him. They claim that the right to the provisional, if not unconditional, possession of his estate, has accrued to them, whether it did or did not accrue to him. As the presumptive heirs of their father, their right to the provisional possession of his estate does not depend upon whether the right accrued to him, because, if the right did

not accrue to him and through him to them, it accrued to them directly, by representation. In other words, if they are not entitled to the provisional possession of the estate, it is because they are entitled to the unconditional possession of it, as owners. The burden of proving that their father existed when the right in question accrued, that is, the burden of proving that their father survived his father, cannot rest upon Mrs. Collins and Mrs. Dubret, because their claim does not depend upon proof of that fact, and it is not to their interest to prove it. On the other hand, the claim of the appellant George Williams does depend upon whether the person whose existence is not known existed at the time when the right in question accrued, because George Williams would not "have had a concurrent right with him to the estate," unless he "existed at the time when the right in question accrued."

We must bear in mind that articles 76, 77, 78 and 79, comprising the entire chapter 3 of title III of the Revised Code, treat only of the class of absentees whose existence is not known and as to whom the law does not establish a presumption, either that they are alive or that they are dead. Chapter 3 therefore provides for the temporary disposition to be made of the rights accruing to that class of absentees whose existence is not known, unless or until it shall be proven whether they were dead or alive when the rights accrued. Article 78 declares that the provisions of the two preceding articles, 76 and 77, shall not affect the right of the absentee if he should eventually return, or the right of his legal representatives or assigns, on proof of his death, of claiming the inheritance and any other rights which the absentee or his representatives or assigns may have; which rights shall be extinguished only by the lapse of time which is established for prescription. And article 79 declares that those who shall have been put in possession of the inheritance shall have a right to the

proceeds received by them in good faith, as long as the absentee shall not appear or a suit shall not be brought in his name.

[8] Counsel for appellant George Williams contends that article 57, in chapter 2, allowing the presumptive heirs to take provisional possession of the estate of an absentee on proof that he has not been heard of for five years, has no application to the case of "a person whose existence is not known." We do not concur in that opinion, for two reasons: First, because it goes without saying that an absentee who has not been heard of for five years is "a person whose existence is not known"; and, second, because chapter 1 and chapter 3 are both under "Title III. Of Absentees." The arrangement of the subjects or headings of the five chapters in that title shows that every chapter deals with absentees as persons who have disappeared, viz.: Chapter 1—"Of the Curatorship of Absentees;" chapter 2—"Of the Putting into Provisional Possession the Heirs of an Absentee;" chapter 3—"Of the Effects of Absence upon the Eventual Rights Which may Belong to the Absentee;" chapter 4—"Of the Effects of Absence Respecting Marriage;" and chapter 5—"Of the Care of Minor Children Where the Father has Disappeared." Article 57, in chapter 2, is therefore applicable, even though articles 76 and 77, in chapter 3, are also applicable, under the circumstances therein mentioned, to "a person whose existence is not known," provided such person has been absent and not heard of for five years.

It seems impossible, therefore, to fit the language of the appropriate articles of the Code into a meaning that would deprive the presumptive heirs of Daniel Williams, whose existence is not known, of their right to have provisional possession of the estate that would be declared to have devolved upon him, if it were known that he was alive when his father died.

All of the French writers, except Proudhon, who have commented upon articles 135 and 136 of the Code Napoléon, from which articles 76 and 77, respectively, of the Louisiana Code, were copied, seem to agree that these articles shall not interfere with the right of a direct descendant heir of an absentee, whose existence is not known, to be sent into provisional possession of his estate. Laurent, Principes du Droit Civil Francais (3d Ed., 1878) vol. 1, No. 255, pp. 322, 323, criticizing the opinion of Proudhon, says:

"Are the children of the absentee admitted to represent their absent father in the succession from which this one is excluded because his existence is not recognized?

"No, says Proudhon, because only those who are predeceased are represented. The children should consequently prove that their father was dead at the moment of the opening of the inheritance, but they cannot make that proof since the life and death of their father are equally doubtful. We will not enter into the details of this controversy; it can be found in Merlin and Dalloz. Proudhon's opinion has no advocates. If you take the exclusive point of view which regulates representation, Proudhon's reasoning is irrefutable. But we are dealing with the question of absence; it is on account of the absence of the father that he is excluded from the succession to which he would have a right if he were living at the time it was opened; he is therefore considered as if he no more existed, as if he were dead. Consequently, his children must be allowed to represent him. It is in that sense that these words of article 136 must be understood, 'or to those who would have inherited it in his default.' In Proudhon's doctrine, they begin by setting aside the father from the succession. Why? Because, in default of the proof of his death, he is considered as still living. Behold, then, the absentee both dead and alive! The jurisprudence has decided in favor of the children."

See, also, Dalloz, Jurisprudence Générale, verbo Absence, 510–512; Dalloz, Codes Annotés, 135 and 136, note 45; Fuzier-Herman, Repertoire du Droit Francais, vol. 1, pp. 115, 116, Nos. 511, 512, 513 and 514.

In the case of Babin et al. v. Phillipon's Ex'rs, 3 La. 374, decided in 1832, the claim-

ants of the succession were nephews and nieces of the deceased. One of the petitioners, Babin, was unable to prove whether his mother, who was a sister of the deceased and had disappeared and had not been heard of for 44 years, was dead or alive. The defendants, executors, contended that the burden of proof was upon Babin to show that his mother was dead, citing article 77 (now 76) of the Code. The case was before the court twice, although the opinion first handed down is not reported. On the first hearing, the court, overlooking the fact that there were no "heirs who would have taken jointly with the absentee," if she had been shown to have been living when the right of inheritance accrued, expressed the opinion "that the law intended to give the succession to those who would have inherited had the heir who was not known to be alive never existed." On rehearing, the court expressed the opposite opinion, but pretermitted a decision of the question, because there were no "heirs who would have taken jointly with the absentee." The court then said:

"It was contended on the first argument, and such was our impression, that the law intended to give the succession to those who would have inherited, had the heir who is not known to be alive *never existed;* in other words, to the heir or heirs next in order of succession. We think, however, with the counsel for the appellees, that the better opinion is, the provision did not contemplate the exclusion should be carried so far, and that it was intended to give the property to those to whom the inheritance would have devolved had the absentee not been in existence *when the succession was opened.* Leaving, therefore, the question untouched, whether, in case there had been heirs who would have taken jointly with the absentee, they might not have had the right to the exclusive possession of the estate, we think that, where there are none such, *the heirs of the absentee may be put in possession, because, had he not existed at the time the succession was opened, they would have stood next in order to the deceased, and could have inherited."* (There are no italics in the original.)

· The important feature of the opinion quoted is the court's conclusion that the expres-

sion in article 77 (then 78), "or on those on whom the inheritance should have devolved if such person had not existed," referred to the time when the succession was opened, and did not mean "if such person had never existed." In other words, the expression was not intended to shut out descendants, forced heirs, of the person whose existence was not known.

Counsel for appellant George Williams cites the case of Dupre v. Reggio, 6 La. 653. The decision is appropriate here only in so far as it sustains our view that the expression in article 77 of the Code "concurrent right" signifies the right of accretion. The ruling in the case cited was that the plaintiff, as transferee of the right of an heir present and as subrogee to the rights of those who were absent and whose existence was not known, was entitled to receive the whole succession. The succession in question was the testamentary succession of the uncle of the three heirs. By his will, the uncle had instituted his three nephews as his heirs, "with the right of accretion to the survivors or survivor of them if any of them died before him." At his death two of the instituted heirs were absent, and their existence was not known. The other instituted heir, being present, transferred to the plaintiff his claim as an instituted heir, with subrogation to his right of accretion. There were no descendants or forced heirs of the deceased testator. Under these circumstances, of course, the transferee of the right of the heir present, with subrogation of his right of accretion, was entitled to have possession of the entire estate.

Counsel for appellant George Williams also cites and relies upon the decision in Dolhonde, Curatrix, v. Lemoine et al., 32 La. Ann. 251; but the decision is not appropriate here, because it rested upon the proof of the fact that the absentee, who had not been heard of for nearly ten years when the suit was filed, was alive when the right in ques-

tion accrued. The suit was filed by his widow, as curatrix of the absentee, to recover his interest in property which had been bequeathed by his deceased uncle to him and others jointly. The only question at issue in the case was whether the absent legatee was yet alive when the testator died. The court concluded, from the evidence, that he was alive at that time, and that therefore his curatrix had a right to maintain an action to recover his interest in the property bequeathed.

Counsel for appellant George Williams cites also the case of Martinez v. Wall, 107 La. 737, 31 South. 1023, but we do not consider the decision appropriate to the case before us. Under the peculiar circumstances of the case cited, the court held that a partition sale made contradictorily with all but one of several coheirs, under a decree of court, would protect the purchaser of the property, because the absent coheir had been gone and had not been heard of for such a long time that there was a strong presumption that his claim would never be presented.

Our conclusion is that the judgment appealed from is correct.

The judgment is affirmed at the cost of appellant George Williams.