REGAN, Judge.
This is an appeal from a judgment in favor of the Public Administrator and the absent heirs of the Succession of Isadore Steinberg, dismissing the petition of Harry Hershberg for possession of the decedent’s estate.
The record reflects that on May 2, 1949, a petition was filed by Harry Hershberg, alleging that Isadore Steinberg, died intestate in the City of New Orleans on April *745 29,1949, leaving real, personal property and debts which rendered an administration of the succession necessary and that he desired the appointment as administrator. Hersh-berg asserted that he was “related to the decedent” who “left heirs residing out of the State of Louisiana and that an attorney * * * should be appointed to represent them * * ”
On May 3, 1949, the judge below ordered an inventory, appointed appraisers, and a curator ad hoc to represent the absent heirs.
Approximately seventeen months elapsed and Hershberg failed to qualify as administrator. Finally, on October 23, 1950, the Public Administrator, successfully filed an opposition to Hershberg’s application for administration, and letters of administration were issued to the Public Administrator on November 29, 1950. His final account was filed on February 21, 1952, homologated and the funds ordered distributed in conformity therewith.
On March 14, 1952, Hershberg filed a petition asserting that he was a cousin of the decedent as reflected by the affidavit of heirship which was attached thereto, and, as such, is the only legal heir entitled to be placed in possession of the property now in the hands of the Public Administrator. Louis Gurievsky and H. H. Rosenberg, who signed the affidavit of heirship, related therein:
“That they were well acquainted with the late Isidore or Isadore Stein-berg who died in the City of New Orleans on April 29, 1949, as well as with his family who were left in Kniazhe, which is in the southern part of Russia, now under the Communist Government, and they well know that all the immediate heirs and relatives of the deceased were massacred in Russia during the occupation by Nazi Germany, and that the closest and only relative is Harry Hershberg, who is alive and living in the City of New Orleans, and who is related to the deceased in the following manner, to-wit:
“The father of Harry Hershberg, whose name was Leon Plershberg, was the first cousin to the grandmother of the deceased herein, whose name was Rebecca Hershberg, wife of Beryl Steinberg; and Harry Hershberg is the second cousin to the father of the deceased, whose name is Bennie Stein-berg; and therefore, Harry Hershberg is related to the deceased Isidore or Isadore Steinberg in the collateral line in the seventh degree.”
The curator ad hoc on behalf of the absent heirs, none of whom he had been able to locate, answered the foregoing pleadings and generally denied that Hersh-berg was entitled to decedent’s estate.
From a judgment in favor of the absent heirs and the Public Administrator dismissing Hershberg’s suit, he has prosecuted this appeal.
The record reveals that Hershberg endeavored to establish his heirship or pedigree by virtue of the foregoing affidavit, together with his own testimony and that of Louis Gurievsky.
Hershberg, while he persisted in the assertion that he was the only surviving heir of the decedent, Steinberg, conceded that the parents of Steinberg had three other children, namely, Ony, á daughter, and two sons, Mitche and Joseph, but insisted that they were dead — because he had been reliably informed by letter that the German Nazis, during the course of World War II, annihilated all of the Jews residing within the City of Kniazhe, Russia, which was the domicile of all of decedent’s other relatives. He then admitted that he did not know if Ony Steinberg, decedent’s sister, had any children. He concluded by relating that the decedent, Louis Gurievsky and himself were all born in Kniazhe, Russia and resided there until he migrated to America in the year of 1904.
Gurievsky testified that he migrated from the Russian Ukraine and arrived in America in 1922. While in Russia he resided in *746 Kniazhe, together with the decedent and Hershberg. He stated that about 1946 he received letters from his brothers, who resided in the Ukraine, informing him that all of the Jews in Kniazhe, including the Steinbergs, had been annihilated—and he knew that the decedent, while he lived, had received the same news from friends residing in Russia; he concluded by asserting that Hershberg is the “nearest living relative * * * in all the world”, although he admitted that he did not know whether Ony, Mitche or Joseph Steinberg, the decedent’s sister and two brothers, had any children.
Hershberg contends that he has adequately “established his heirship” and satisfactorily explained the “whereabouts of those persons more closely related to the decedent.”
The attorney for absent heirs maintains that Hershberg has failed to discharge the burden of proving his heirship and, therefore, the trial court properly dismissed his petition.
Only a question of fact is posed for our consideration and a careful reading of the affidavit of heirship, together with the testimony of Hershberg and Gurievsky is convincing proof of itself that Hersh-b erg’s endeavor to establish his legal right to inherit decedent’s estate is predicated on the rankest hearsay and no useful purpose would be served in pointing up this fact by a repetition of the foregoing testimony.
We are, however, urged to take judicial notice that Kniazhe is in that part of Southern Russia which was captured and occupied by the Nazis during World War II, and that they systematically murdered over six million Jews during their conquests, including all of the Steinbergs residing in Kniazhe, Russia—a fortiori, since none of the Steinbergs living in that City have been heard from for a number of years, there is a strong presumption that all of the decedent’s closer relatives are dead.
We have in several relatively recent cases taken judicial notice of matters of public history. State ex rel. Singelmann v. Morrison, La.App., 57 So.2d 238; Bologna v. New York Life Insurance Company, La.App., 40 So.2d 48. Judicial notice of history includes notice of matters of current history, but it must be certain and undisputable. We are aware of the fact that it was or is common knowledge that in the Russian Ukraine Jews were persecuted and forced to seek sanctuary in other countries, however, we cannot assume absolute knowledge of the secondary and more minute circumstances connected with historical events, though they are or may have been of particular or special interest and, therefore, we are unable to logically conclude from the foregoing premises which do not express universal truths that, because a great many (not all) Jews were annihilated in Kniazhe, Russia, all of the Steinbergs were, likewise, murdered. Even Gurievsky related that the information which he obtained relative to the occupants of the City of Kniazhe being exterminated was obtained from his brothers who had successfully escaped and subsequently returned to the City after the Nazis had been forced to relinquish their occupation thereof.
Counsel for Hershberg argues that the decedent’s succession was opened in favor of his closest relatives who lived in Russia and whose existence, at the time of the opening of the succession, were unknown; under these circumstances LSA-Civil Code Article 77 provides that the inheritance devolves exclusively “on those on whom the inheritance should have devolved if such person had not existed”, therefore, Hershberg, the closest living heir, should be called to the succession to inherit. Counsel cite in support thereof Succession of Butler, 1928, 166 La. 224, 117 So. 127; Pfister v. Casso, 1926, 161 La. 940, 109 So. 770; Martinez v. Wall, 1902, 107 La. 737, 31 So. 1023; Succession of Williams, 1921, 149 La. 197, 88 So. 791.
*747 In our opinion the foregoing cases are quite distinguishable from this one. In practically every case wherein the ratio decidendi thereof was predicated on the provisions of LSA-Civil Code Article 77, the person claiming the succession was coheir of the same degree, by representation or otherwise, of the absentee and hence inherited as one “who would have had a concurrent right” with the absentee to the estate — whereas here, Hershberg is related to the decedent Steinberg in the collateral line in the seventh degree and it is our understanding of the jurisprudence that collateral kindred, claiming as heirs, must establish the death of relations in the ascending line. Hooter’s Heirs v. Tippet, 12 Mart., O.S., 390; Bernardine v. L’Espinasse, 1828, 6 Mart., N.S., 94; Miller v. McElwee, 1857, 12 La.Ann. 476; Owens v. Mitchell, 5 Mart., N.S., 667, 668; De Gentile v. White Castle Lumber & Shingle Co., 1912, 130 La. 705, 58 So. 517. A careful analysis of the jurisprudence developed in this state reflects the existence of much controversy in the interpretation of LSA-Civil Code Article 77. In France the commentators were also divided in their opinion of the effect of the article and a majority and a minority view resulted therefrom. A similar article appears in the Civil Code of Spain and their interpretation thereof is in accord with the French majority view. See 4 T.L.R. 273, wherein LSA-Civil Code Article 77 is interestingly discussed.
For the reasons assigned herein-above we are in accord with the result reached by the trial judge, however, we are of the opinion that the judgment should have been one of non-suit rather than a dismissal of Hershberg’s petition for possession.
For the reasons assigned the judgment appealed from is amended so as to non-suit the claim of Harry Hershberg and as thus amended it is affirmed.
Amended and affirmed.