## No. 7753.

### R. T. BEAUREGARD, CURATOR, ETC., VS. JULIA ANN LAMPTON.

When the heirs of a deceased person have made proof of his death and of their heirship, though *ex parte*, and have been recognized as heirs and sent into possession, the succession of the decedent has been opened and closed. And thereafter, any *mortuaria* proceedings and decrees for the appointment of an administrator or curator, are null and void and of no legal effect. Until the original *mortuaria* are rescinded and set aside, or re-opened, by proper action of the court in which they were instituted, they stand as a perpetual bar to the demand of creditors for a judicial administration of the estate of the deceased. The recourse of such creditors is a personal action against the heirs who have thus been put in possession.

APPEAL from the Second Judicial District Court, parish of Plaquemines. *Pardee*, J.

*E. Howard McCaleb* and *Walter S. Finney* for Plaintiff and Appellee:

First—A defendant who goes to trial without requiring a decision on her plea of *res judicata* waives it.

Second—*Ex parte* orders rendered without any *contestatio litis* and without any evidence to support them, do not constitute the authority of the thing adjudged.

Third—Marriage and heirship must be judicially established like other facts.

Fourth—Probate courts have no jurisdiction to determine by *ex parte* orders questions of heirship.

Fifth—An action for the recovery of an entire succession is considered as an immovable, and only prescribed by thirty years. To acquire the ownership of property belonging to a succession by the prescription of ten years, good faith and a just title are both essential on the part of the possessor.

Sixth—Those who have obtained possession of a succession by false representations as to their status cannot be considered in good faith, nor can a title based upon an *ex parte* order of court, procured by fraud, be regarded as just.

Seventh—When "the record of the proceedings and evidence" in a case tried and determined by a competent court of one of our sister States is offered and received without objection, it will be too late at a subsequent stage of the trial to object. Such proceedings culminating into a judgment settling the questions of status and legitimacy are admissible against one no party thereto, and must be respected by the courts of this State.

Eighth—One claiming under a vendor and warrantor as heir, although not technically a party to a judgment against her alleged ancestor's vendees, must be considered as a privy and bound thereby, unless she can show "that she possessed proofs that would have occasioned

the rejection of the demand and which have not been employed, because she was not summoned in time."

Ninth—The failure of a defendant to testify as to facts within her knowledge creates the presumption which ordinarily exists against a party who withholds explanatory evidence.

*A. Lartigue* and *M. E. Livaudais* for Defendant and Appellant.

The opinion of the Court was delivered by

FENNER, J.   Edward Shipp Lampton died in the parish of Plaque-mines on May 30th, 1865.   In July of the same year, his succession was regularly opened in the District Court for said parish (then vested with probate jurisdiction), upon due proof of his death; and a petition was filed by Elizabeth Tharp, representing herself as the widow of deceased, in which she alleged that she was legally married to deceased, that Julia Ann Lampton, then of age, was the only child of said marriage and sole heir of deceased; that he left property which belonged to the community of acquests and gains between herself and her deceased husband, and which, after his death, was held in common by her and the said child; that in order to ascertain their respective rights and with a view of being put in possession of the property, it was necessary that an inventory should be taken; and she prayed for and obtained an order for the taking of such inventory.

It was accordingly taken in due form and filed.   Thereupon a joint petition of the widow and of Julia Ann Lampton was filed, in which they represented that, as surviving widow in community and as sole heir respectively, they were desirous of accepting the succession with benefit of inventory, and desired to be put in full and definitive possession thereof, each for one undivided half, and rendering themselves liable for the charges and debts of the succession to the value of the property inventoried.   Upon this petition the judge rendered and signed an order recognizing the said surviving widow and child as sole legal heirs, and, as such, putting them in possession of the property as prayed for.

They accordingly went into possession as undivided owners.   Sub-sequently the mother died, and the daughter inherited her interest, and has remained in undisturbed possession of the whole estate to the pres-ent day.   In 1878, thirteen years afterwards, Réné T. Beauregard, appear-ing as agent of certain non-residents, claiming to be creditors of the succession of E. S. Lampton, presented a petition to the parish court of Plaquemines, in which he averred that he was authorized by said credi-tors to collect the debts due them and, to that end, to apply to be appointed curator of the succession; and alleging that the succession was vacant, he prayed that an inventory should be taken, and that, in due course of proceeding he might be appointed and qualified as curator.

Beauregard, Curator, vs. Lampton.

The inventory was taken and homologated, and in ordinary course Beauregard was appointed and qualified as curator.

In the whole course of these last proceedings we find not the slightest reference to the former mortuary proceedings, and nothing to show that the parish judge was even made aware that such had ever taken place.

Thereupon Beauregard, in his capacity as curator, instituted the present petitory action against the defendant, Julia Ann Lampton, alleging that the immovable property described in the inventory belonged to the succession of E. S. Lampton; that, immediately after his death, the defendant, "without color of right or title," took possession of the whole estate of said E. S. Lampton, and had, since that time, possessed and enjoyed the same, and appropriated its revenues; wherefore, he prayed for judgment decreeing the property to belong to the succession, condemning the defendant to deliver the same to him as curator, and to pay $10,000 as rents and revenues of said immovables, and a further sum of about $3300 as the value of movable estate converted to defendant's use.

Defendant excepted to the action on two grounds, viz:

1st. That plaintiff had no right to stand in judgment as curator, because the succession was not vacant, but had been previously administered.

2d. That, heirs having been put in possession of the estate by judgment of the District Court in 1865, which judgment was of record and undisturbed and remained in operation and effect, the plaintiff had no standing in court.

Subsequently, reserving fully the benefit of said exceptions, for answer, in case they should be overruled and not otherwise, she set up her title to the property by inheritance from E. S. Lampton and her mother, and under the judgment of the District Court putting herself and mother in possession. She further pleaded the prescription of three, five and ten years; and, in case her defenses should be overruled, she reconvened for improvements and betterments.

The case went to trial on the merits without prior ruling on the exceptions. Evidence was taken touching the *status* of defendant's mother as the lawful wife of E. S. Lampton, and that of defendant as the child of E. S. Lampton.

The judge maintained the *status* of the mother as the lawful wife of deceased; but decided that defendant was not his child; overruled the plea of *res judicata;* maintained the plea of prescription as to the one-half of the property inherited from her mother, but overruled it as to the other half which she held as direct heir of deceased, on the ground that she was not such heir and had no just belief that she was such; gave judgment in favor of plaintiff for one-half of the property, main-

tained defendant's title to the other half and dismissed the counter claims for revenues and improvements as in case of nonsuit.

From this judgment defendant has appealed.

We cannot enter into the merits of this controversy so far as the actual *status* of defendant and her mother is concerned, as to which, however, we may say that the evidence is by no means satisfactory to our minds so far as it impeaches the *status* of defendant.

We find it unnecessary to inquire how far the exceptions, pleaded *in limine* by defendant, were waived by her going into trial on the merits, without requiring action on them.

The original mortuary proceedings in the succession of E. S. Lampton and the judgment rendered therein, putting defendant and her mother in possession as partner in community and sole heir, are set up in the answer as well as in the exceptions, and the whole were offered and received in evidence on the trial.

We consider those proceedings to be a complete bar to the present action.

The decision in Soye vs. Price, 30 An. 93, by irresistible reasoning, settles the principle that beneficiary heirs, whether minors or major heirs accepting with benefit of inventory, may, as such, be put in possession of the succession, without administration and liquidation thereof, unless the latter be required by creditors, and such heirs may then be sued by creditors in courts of ordinary jurisdiction.

In another case it was held that, when a surviving wife becomes adjudicatee of interest of heirs in the community and is then put in possession of the whole estate, the succession is closed, and succession creditors may sue her in courts of ordinary jurisdiction. Augustin vs. Avila, 29 An. 837.

Again, held: When heirs are put in possession, the succession is wound up and ceases to exist. Creditors of succession become creditors of heirs, and if heirs become insolvent, the creditor has himself to blame in not having required them to give security, as he might have done. Sevier vs. Sargent, 25 An. 220.

Held: Judgment of parish court ordering heirs into possession cannot be treated as an absolute nullity or attacked collaterally, and creditors in such case, can no longer proceed against the former succession representative, but must sue heirs. Fowler vs. Gordon, 24 An. 270.

Held: The putting of heirs in possession terminates the succession, and if a creditor subsequently apply for administration, his application must be rejected; his remedy is against the heirs. Succession of Durnford, 25 An. 56.

Other authorities exist to the same effect, which are quoted in these several cases.

From these authorities, it conclusively results that in the original mortuary proceedings the succession of E. S. Lampton was opened and was closed and wound up.

We cannot recognize the doctrine that, in such a case, in an independent proceeding, having no reference to, but entirely ignoring, the original completed *mortuaria*, creditors can reopen such a succession and provoke an administration. As long as such original *mortuaria* and the judgment closing and winding them up exist, and are not revoked or set aside or reopened by the court which administered them, subsequent independent mortuary proceedings are null and void and can vest no title or authority in representatives appointed under them.

Nothing in the record indicates that the judge who appointed plaintiff as curator was aware of the existence of the original *mortuaria*, which had taken place thirteen years previously and before a different court, to whose probate jurisdiction his court had succeeded. We can not believe that, if he had been aware of them, he would have maintained the new proceedings.

We discover in the record no reason or motive for the anomalous course pursued. It does not even appear that the creditors, who provoked the new administration, ever even demanded payment from the beneficiary heir, who had expressly assumed the payment of succession debts to the extent of the value of the succession property.

Conceding that she would have refused payment, she was open to suit by them in the ordinary tribunals, and, as she remained in possession of the property, and as it is not made to appear that she had either alienated or encumbered it, we cannot perceive why this remedy was not perfectly effective.

Her *status* as heir was a matter which creditors could, in no case, have any right or interest to contest. It was no concern of theirs, since their rights of payment were superior to the claims of any heir.

No persons have appeared, so far as the record shows, to claim the inheritance or to set up conflicting rights of heirship.

Admitting that, under some conceivable circumstances not here established, creditors, as well as heirs, might have an interest to set aside the order of possession and to have the property restored to the custody of the Court for administration and distribution, it is yet clear that such proceeding could only be taken as a continuation of the original *mortuaria*, by demanding therein, contradictorily with the heirs, a revocation of the order of possession, and the appointment of a curator, with the right to demand restoration to him by the heirs of the succession estate.

We do not say that the *ex parte* judgment of the probate court, recognizing heirs and putting them in possession, operates as *res judicata* upon the question of their *status*.

What we hold is, that such order, as long as it exists of record and unrevoked, operates as a closing of the succession, and is a bar to further mortuary proceedings, which can only be had after the setting aside thereof. It cannot be ignored and treated as an absolute nullity.

These considerations are fatal to the right and title of plaintiff, upon the strength of which alone could he succeed in the present action. The rights of creditors and heirs in proper proceedings are unaffected hereby.

It is, therefore, ordered, adjudged and decreed that the judgment appealed from be annulled, avoided and reversed, and proceeding to render such judgment as the lower court should· have rendered, it is now ordered, adjudged and decreed that the demand of plaintiff be rejected at his cost in both courts.

Rehearing refused.