**f So.2d 677**

**DUGAS et al. v. POWELL et al.**

**No. 35887.**

March 31, 1941.

O'Niell & O'Niell, A. H. Reed, H. M. Ansley, and John C. Hollingsworth, all of New Orleans, for appellants.

Deutsch and Kerrigan, of New Orleans, for appellee Edgar H. Powell.

Alexis Brian, of New Orleans, in pro. per. and for appellees E. P. Brady and others.

ODOM, Justice.

This is a suit brought by 1,079 individuals to establish title to real estate; under Act 38 of 1908. The tract of land involved is situated in the Parish of Jefferson, and it is alleged that neither plaintiffs nor defendants are in actual physical possession of the property.

In addition to the original, plaintiffs filed two supplemental petitions. These petitions are quite lengthy, covering about 200 pages of the record. We need not discuss plaintiffs' allegations in detail further than to say that they alleged, in substance, that the tract of land which they claim was owned by Francois Zenon Boutte when he died intestate in the year 1863, and they

trace his title through mesne conveyances back to an act of purchase dated July 8, 1705, and allege that the various acts of transfer are recorded in the conveyance records of Jefferson Parish, where the land is situated.

Plaintiffs alleged that they are the true and lawful owners of the property, having acquired it by inheritance from the said Francois Zenon Boutte, they being his sole and only heirs.

At length and in detail, plaintiffs set out the fractional interest owned by each of them. The suit is brought against 162 named individuals who, plaintiffs allege, claim to own specified fractional interests in the said land, and against Edgar H. Powell and Alexis and A. Morgan Brian, who, plaintiffs allege, claim to have acquired interests in the property by purchase from the 162 first-named individuals. They alleged that:

"* * * said defendants base their claims upon a purported judgment, dated June 26, 1936, rendered in the Proceedings No. 11,842 of the docket of this Court, recorded in the Clerk's office of Jefferson Parish, in Conveyance Book 129, at Folio 598, and that Alexis Brian and A. Morgan Brian, both of the Parish of Orleans, State of Louisiana, claim to be the owners, jointly, of a 571/2304 interest in the said property, by virtue of a purported deed from the said Edgar H. Powell, dated June 26th, 1936, recorded in Conveyance Book 129, at Folio 607."

Edwin P. Brady was made a defendant in the suit, plaintiffs alleging that he claims

to have acquired certain interests in the property from the Brians.

In the original petition, plaintiffs alleged that the 162 named individuals were represented in this state by Brian & Brian, attorneys, and they prayed that those individuals be cited through their agents and attorneys in fact. The citation addressed to those individuals was served on the Brians. Thereafter, the Brians filed in court a pleading in which they denied that they represented the 162 individuals. Counsel for plaintiffs acquiesced in the pleading filed by the Brians, and the suit against that group of defendants was dismissed. No further effort was made to cite those individuals, so that the suit, as it is now presented, is against Powell, the Brians, and Edwin P. Brady only.

In their first supplemental petition, counsel for plaintiffs added some 60 or 70 names to the original list of claimants, and this gives rise to certain exceptions filed by the defendants Powell, the Brians, and Brady.

Defendants filed a plea to the jurisdiction of the court ratione personae, an exception of misjoinder and non-joinder of parties, an exception to the citation, an exception of vagueness, and an exception of no cause of action.

The trial judge in his written reasons for judgment mentioned these exceptions and said:

"* * * and the Court being of the opinion that the exceptions are well taken, and well founded in law and in fact and should be maintained, and more particular-

ly the exception of no cause or right of action should be maintained."

It was ordered that the exceptions, "and more particularly the exception of no cause of action", be maintained and the suit dismissed. From this judgment plaintiffs appealed.

The trial judge in his written reasons for dismissing plaintiffs' suit laid special emphasis on the exception of no cause of action, and that is the exception which is especially stressed in this court. This exception is predicated upon the contention that plaintiffs may not advance their claim to ownership of the property as heirs of François Zenon Boutte without first bringing a direct action to set aside the judgment mentioned by them in their pleadings, as quoted above. The contention of counsel for defendants is that the validity of that judgment cannot be collaterally attacked in an action of this kind.

The only reference which plaintiffs made in their petitions to that judgment is the allegation that:

"* * * said defendants base their claims upon a purported judgment, dated January 26, 1936, rendered in the Proceedings No. 11,842 of the docket of this Court, recorded in the Clerk's office of Jefferson Parish, in Conveyance Book 129, at Folio 598."

Counsel for defendants argued orally before the court, and it is stated in brief, that, until directly attacked, that judgment must be recognized "to the exclusion of the plaintiffs' claims as the alleged heirs of the deceased Boutte"

Neither the judgment referred to nor the proceedings leading up to its rendition are in this record. Plaintiffs did not make them a part of their petition by reference or otherwise. They go no further than to state that defendants base their claim to title on that judgment.

We are informed by counsel, not by the pleadings filed, that the judgment referred to was rendered in an ex parte proceeding brought by the 162 individuals mentioned above to have themselves recognized as the heirs of Francois Zenon Boutte, and that they were recognized as such and decreed to be the owners of the property.

In passing on the merits of an exception of no cause of action, courts may consider only the well-pleaded facts set out in the petition. But, conceding that the judgment referred to did recognize the named individuals as the heirs of Francois Zenon Boutte and, therefore, the owners of the property involved, our opinion is that it was not necessary for plaintiffs to attack that judgment in a direct action before bringing their suit.

In Davidson v. McDonald et al., 131 La. 1047, 60 So. 679, it was held that an action in which plaintiffs seek to recover, and pray to be decreed the owners of, real estate, and which purports to be brought under Act 38 of 1908, differs from the petitory action only in the allegation that defendant is not in possession, and that such action does not differ from the petitory action in the matter of the obligation of the plaintiffs to establish the title set up by them.

In Metcalfe et al. v. Green et al., 140 La. 950, 74 So. 261, it was held that Act 38 of 1908, being an act to authorize suits to establish title to real estate, contemplates a suit in which the litigants come before the court on equal terms and subject only to the ordinary rules in regard to the burden of proof.

In Griffing et al. v. Taft, 151 La. 442, 91 So. 832, 833, it was held that:

"Act 38 of 1908 was intended as a particular form of action to adjudicate titles to real estate, where neither of the claimants is in actual possession of the land. In such action the judge is called upon to decide which of the claimants is the owner of the land in dispute."

In Smith v. Chappell, 177 La. 311, 148 So. 242, 244, the court said:

"A petitory action is one brought by an alleged owner of real estate who is out of possession against another having possession to determine ownership. The settled jurisprudence of this state is that a plaintiff in a petitory action, in order to recover, must rely on the strength of his own title and not on the weakness of that of his adversary. In order to maintain his suit, he carries the burden of proving title in himself. The title of the defendant is not an issue until plaintiff has proved an apparently valid title in himself."

In support of these general rules, the court cited a long list of cases.

 In a petitory action, in order to maintain his suit, the plaintiff carries the burden of proving title in himself, and must rely on the strength of his own title

and not on the weakness of that of his adversary. The same rule applies to suits brought under Act 38 of 1908.

The case of Beland and Johnson v. Gebelin and Duggan, 46 La.Ann. 326, 14 So. 843, 844, was a petitory action brought by plaintiffs, who alleged that they were the sole heirs of their mother and father, and that as such they owned certain real estate. They alleged that said property had passed into the hands of the defendants as a result of certain proceedings taken by the public administrator, who had ex parte "procured an order to sell property to pay debts", and that such proceedings were null for reasons specifically set out in the petition.

Defendants excepted to plaintiffs' petition on various grounds, alleging that the proceedings and sales under which the property passed into their hands could not be "attacked collaterally, but plaintiffs must institute a direct action to revoke and annul them and make proper parties thereto". The trial judge sustained the exceptions and dismissed plaintiffs' suit. On appeal the judgment was annulled. In the course of its opinion, this court said:

"There is no doubt as to the legal necessity, under certain circumstances, of bringing direct actions to annul judicial proceedings and decrees contradictorily with the parties legally interested in maintaining them, as conditions precedent to relief asked, but the necessity for such direct action *is contingent upon the issues which the plaintiff tenders*. In a petitory action, brought under ordinary conditions, the only parties necessary, originally, to the

action, are the plaintiff claiming ownership of property, and a defendant in possession of the same. If the defendant deems it to his interest that his vendor, his lessor, or other parties, be brought into the proceedings, it is for him to take steps leading to that end. The plaintiffs in this case have not cumulated with the petitory action proper actions of nullity against the various proceedings alluded to in the pleadings, and made parties accordingly, for the reason that the theory of this case is that all those proceedings are absolute nullities, needing no judicial action to set them aside; that they are void, not voidable. The allegations of the petition are to that effect. If the plaintiffs think proper to go into this case on that basis, on the strength of the correctness of their legal conclusions on that subject, they have, at their own risk, the right to do so. Should it turn out, on inquiry, that the proceedings alluded to were not void, as claimed, but simply voidable, and the case should be before the court without the proper parties and proper prayer, plaintiffs will take nothing by their action. Defendant cannot, in limine and on exception, introduce evidence, and have the court pass upon the character of the proceedings which plaintiffs assume to be, and characterize as, absolute nullities. That will be one of the issues on the merits." (Italics ours.)

In that case, plaintiffs alleged that the judicial proceedings and sales thereunder were null and void. In the case at bar, plaintiffs do not allege, in so many words, that the judgment under which, according to their allegations, defendants claim title is absolutely null and void, but they do allege that they are the sole heirs of Francois Zenon Boutte. If that allegation is true, it follows necessarily that the judgment referred to is null and void. Plaintiffs have thought proper to treat that judgment, such as it was, as void and not voidable. They have come into court on that basis, and, as was stated in the Beland case, supra, they have done so at their own risk, because, if defendants on trial of the case should base their claim to title on that judgment, thereby raising the issue as to its validity, and if it should be decided that the judgment is valid, plaintiffs will take nothing by their suit.

In order to set out a cause of action, it was not necessary for the plaintiffs to attack defendants' chain of title or any link therein. Defendants' title will not be at issue unless and until plaintiffs prove an apparently valid title in themselves.

In the case of Bankston et al. v. Owl Bayou Cypress Co., 117 La. 1053, 42 So. 500, 503, it was held that a plaintiff in bringing a petitory action is not necessarily forced to cumulate therewith an action of nullity to set aside judicial proceedings in which apparently his title to the property has been divested. In the course of its opinion, the court said:

"Plaintiffs have the right at their own risk to ignore (as being absolutely null) proceedings which might be set up by defendants; but, should they be mistaken in the legal situation, and the proceedings, when disclosed, prove to be of such a char-

acter as to have necessitated that plaintiffs, before resorting to a petitory action, should have had those proceedings annulled, or had, at least, cumulated an action of nullity simultaneously with that action, plaintiffs will be forced back to their original remedies and take nothing in their petitory action. That question has been set at rest by several decisions. Beland v. Gebelin, 46 La.Ann. 326, 14 So. 843."

The ruling in the case of Long et al. v. Chailan et al., 187 La. 507, 175 So. 42, supports the general rule that one who intends to bring a petitory action, and who knows or anticipates that the defendant will depend upon certain proceedings to support his title, need not seek to have such proceedings set aside before bringing his petitory action, but may bring his suit and treat the sale or proceedings on which defendant may depend as absolute nullities. The court in that case cited both the Beland and the Bankston cases, supra.

The cases upon which defendants rely mainly to support their theory are Fowler v. Succession of Gordon, 24 La.Ann. 270, and Beauregard, Curator, v. Lampton, 33 La.Ann. 827.

A careful reading of those cases shows that the rulings therein do not support their contentions. In the Fowler case, the plaintiff brought an action to enforce a claim against the succession of Gordon, and, while the plaintiff's suit was pending, the heirs of Gordon were put into possession of the property under a judicial partition, and the executor of Gordon's estate rendered his final account, which

was duly homologated, and he was discharged from the administration of the estate.

After the heirs had been sent into possession and after the executor had been discharged, the executor excepted to the further prosecution of plaintiff's suit against him. The court sustained the exception and abated plaintiff's suit as to the executor, but reserved plaintiff's right to make Gordon's heirs parties defendant. Plaintiff appealed, and the judgment was affirmed.

The court held that the putting into possession of the Gordon heirs did not leave plaintiff without remedy. The court said, "He can make the heirs parties defendant and recover judgment against them jointly for whatever sum that may be found to be due him by their ancestor." It was held that the judgment of the parish court, "decreeing the partition and ordering the heirs to be put in possession of the property, can not be treated as an absolute nullity, nor can it be attacked collaterally. And the same remark is applicable to the judgment homologating the account of the executor and discharging him".

In the Beauregard case, Edward Shipp Lampton died on May 30, 1865. In July of that year his succession was regularly opened in the District Court for the Parish of Plaquemines by his widow and daughter, who alleged that the property left by the deceased belonged to the community, and was owned one-half by the widow and one-half by the daughter as the sole heirs of the

deceased. They prayed for an inventory, which was made. Thereafter, the widow and daughter accepted the succession with benefit of inventory and made themselves liable for the debts and charges of the succession to the value of the property inventoried. A judgment was rendered and signed, recognizing the surviving widow and child as the sole legal heirs of the deceased Lampton, and as such they were sent into possession of the property. They went into possession, and subsequently the mother died, and the daughter inherited her interest and remained "in undisturbed possession of the whole estate" until 1878, a period of 13 years.

In the year 1878, Beauregard, appearing as agent of certain non-resident creditors of the succession of Lampton, presented a petition to the parish court of Plaquemines Parish, applying to be appointed curator of Lampton's succession, alleging that the succession was vacant. The judge of the parish court appointed Beauregard as curator of the alleged vacant succession, and he qualified as such.

Beauregard, in his capacity as curator, instituted a petitory action against Julia Ann Lampton, the daughter of the deceased, alleging that the immovable property described in the inventory belonged to the succession of Edward Shipp Lampton.

The defendant excepted to the action on the ground that plaintiff had no right to stand in judgment as curator because the succession was not vacant but had been previously administered. This exception

was sustained. In the course of its opinion, this court said:

"We cannot recognize the doctrine that, in such a case, in an independent proceeding, having no reference to, but entirely ignoring, the original completed mortuaria, creditors can reopen such a succession and provoke an administration. As long as such original mortuaria and the judgment closing and winding them up exist, and are not revoked or set aside or reopened by the court which administered them, subsequent independent mortuary proceedings are null and void and can vest no title or authority in representatives appointed under them. Nothing in the record indicates that the judge who appointed plaintiff as curator was aware of the existence of the original mortuaria, which had taken place thirteen years previously and before a different court, to whose probate jurisdiction his court had succeeded. We can not believe that, if he had been aware of them, he would have maintained the new proceedings."

Further on in this opinion the court said:

"We do not say that the ex parte judgment of the probate court, recognizing heirs and putting them in possession, operates as res judicata upon the question of their status. What we hold is, that such order, as long as it exists of record and unrevoked, operates as a closing of the succession, and is a bar to further mortuary proceedings, which can only be had after the setting aside thereof. It cannot be ignored and treated as an absolute nullity."

The ruling in that case is not applicable to cases like the one presently before us. In that case the succession of the deceased had been administered under court orders, the debts had been paid up to the amount of the inventory, the succession was closed, and the heirs went into possession and remained in possession undisturbed for 13 years. The plaintiff Beauregard, representing certain alleged creditors, went into another court and attempted to reopen the succession and again administer it as curator, alleging that the succession was vacant. The court held that he could not ignore the former mortuary proceedings under which the succession had been administered.

■ The above has reference to the exception of no cause of action filed by the defendant Powell. We think there is no merit in his exception. The defendants Brian also filed an exception of no cause of action, their contention being that plaintiffs are precluded from bringing this suit by the prescription of 30 years, established by Article 1030 of the Revised Civil Code. Their argument is that the ex parte judgment sending defendants into possession was an acceptance of the succession by the parties to it, and that this acceptance cut off the right of any other heirs to accept after the 30-year period had lapsed, under the doctrine announced in Bendernagel v. Foret, 145 La. 115, 81 So. 869, and Tillery v. Fuller, 190 La. 586, 182 So. 683.

■■ The ruling in those cases is not applicable here, for the reason that, on exception of no cause of action, the well-pleaded allegations of plaintiffs' petition must be accepted as true, and plaintiffs allege, in effect, that the 162 persons referred to were strangers to the succession. If that be true, their acceptance thereof did not have the effect of cutting off plaintiffs' rights. The paramount question raised by plaintiffs' pleadings is whether they are, in fact, the sole heirs of Francois Zenon Boutte, as they allege. That question will have to be determined at the trial of the case on its merits. These exceptions of no cause of action are without merit and should have been overruled.

The exception of misjoinder of parties plaintiff is levelled at the suggestion that in plaintiffs' original petition certain individuals were named as plaintiffs who were not named in plaintiffs' first supplemental petition, and that in the first supplemental petition certain individuals were named as plaintiffs who were not named in the original petition. Plaintiffs clarified this situation in their second supplemental petition by alleging:

"That the paragraph containing the names, surnames and places of residence of the plaintiffs, in the first supplemental and amended petition on file herein, be amended and supplemented to include the names of all the plaintiffs written, or set forth in the paragraph containing the names, surnames and places of residence of the plaintiffs, in the original petition on file herein, the same as if said names were written or set forth in extenso."

■ Plaintiffs did not by their first supplemental petition substitute others for the original plaintiffs, but merely added, with leave of the court, others. The ad-

dition of other plaintiffs is not the same thing as substituting new ones in the place of those originally named. Garland v. Keen, 18 La.App. 652, 139 So. 54.

The exception of non-joinder has no merit for the reason that Act 38 of 1908, which authorizes suits of this kind, provides that "either of the claimants may bring suit against one or all the adverse claimants, and for that purpose may join one or more adverse claimants in the same suit as defendants, to have the titles to the land adjudicated upon by the court having jurisdiction of the property".

The exception to the jurisdiction is levelled at the attempt of plaintiffs to cite certain individuals through Brian & Brian, attorneys. Since plaintiffs have abandoned their case against the defendants who were not cited and since they need not be joined in the suit, the exception has no merit.

We have carefully read and considered all of the exceptions filed and the arguments in support of them and our conclusion is that there is no merit in any of them.

For the reasons assigned, the judgment appealed from sustaining the exceptions is set aside, and the case is remanded to the district court for trial on the merits; costs of the appeal to be paid by the appellees, all other costs to await final decision on the merits.

O'NIELL, C. J., recused.

LAND, J., absent.