## No. 14,034.

### JOS. P. MARTINEZ VS. JAMES P. WALL ET ALS.

107 737
115 374

#### SYLLABUS.

The objection to an acceptance of title raised by an adjudicatee of property sold under a judgment of partition that one of the joint owners of the property had not been made a party to the partition proceedings, will not be sustained where the evidence shows that the interest which is alleged to have been not represented was that of a presumptive heir in a succession opened in 1877, and whose existence was then unknown and continues still to be unknown. Under such circumstances a partition sale made contradictorily with the co-heirs of the absentee, under decree of court, will protect the purchaser.

IN RE Jos. P. Martinez applying for *Certiorari*, or writ of review, to the Court of Appeal, Parish of Orleans, State of Louisiana.

---

*James Wilkinson,* for Applicant.

---

*Frank E. Rainold,* for Mrs. Johanna Phillips, Respondent.

The opinion of the court was delivered by

NICHOLLS, C. J.   The property involved in this litigation was adjudicated on the 13th of July, 1888, to the State of Louisiana, in pursuance of the current revenue law of 1882, for alleged delinquent taxes of the year 1887, which taxes were assessed against the property as that of Mary Agnes Wall, individually.

On the 25th of October, 1889, it was adjudicated at a sale made by the tax collector at the instance of the State, in pursuance of Act No. 80 of 1888, to James C. Galvez.  Galvez transferred the property in June, 1893, to Joseph P. Martinez, and the latter transferred it in August, 1893 (retaining a counter-letter showing that the sale was simulation), to Antonio Marti.  On the 30th of April, 1894, Marti filed a suit in the Civil District Court in which he alleged the above facts and averred that he was the owner of the property and entitled to the possession thereof.

That Mary A. Wall was in the wrongful and illegal possession thereof.  He prayed for citation upon her and that, contradictorily with her, he be decreed the owner of the property and placed in possession thereof, and in the alternative that there be judgment in his favor for $256 for reimbursement of taxes paid by him on the property, which payment had enured to defendant's benefit.

Defendant answered, pleading the general issue and averring that she was the owner of only an undivided interest therein.  She alleged that the property belonged to her two brothers and herself in indivision; that if she were the owner of the whole, the tax sale on which plaintiff's title was based, was null and void, being an assessment in the name of a party other than the owner.  Plaintiff pleaded the prescription of one, two and three years against any attack upon the sale.

The District Court rejected the plaintiff's demand and he appealed from the judgment to the Court of Appeal, Parish of Orleans.  That court affirmed the judgment, and the cause was taken on a writ of review to the Supreme Court, which rendered an opinion and judgment which will be found reported in the 51 Annual as Antonio Marti vs. Mary Agnes Wall.

The decree of the Supreme Court was that the judgment of the Court of Appeal and that of the District Court be so amended as to decree the sale of the property in dispute null and void as to one undivided

half interest, and good and valid as to the other undivided half interest; that in other respects the judgment be affirmed.

The only defendant in that case was Mary Agnes Wall, one of four children of Julia Wall. The property was owned by *Julia Wall* at the time of her death in July, 1877. The three other children of the deceased were sons—one of whom (Patrick J. Wall) had disappeared about 1874 and had not been heard from after that time up to the date of Marti's suit. The succession of Julia Wall was opened and placed under administration, with one of the sons (Thomas J. Wall) as administrator. It was under administration at the time of the tax adjudication to the State. Thomas J. Wall died subsequently and no attempt was made to reopen the succession. Mary Agnes Wall bought out the interest of the other son, James J. Wall. She and her brother, James J. Wall, resided continuously upon the property up to the institution of the suit of Marti against her. No judicial proceedings were taken of any kind looking to the placing of any property which the absentee, Patrick J. Wall, had in Louisiana, either in the *provisional possession of his presumptive heirs* or that of a curator. Whatever property he had remained untouched and unrepresented throughout. Mary Agnes Wall did not claim to represent him, or to hold under or through him in any way. When sued, she disclaimed doing so. The decree of the Supreme Court said nothing as to its effect upon the possession of the property. It left that matter to be fixed by the legal results which would flow legally from it. After the decree became final, Joseph P. Martinez, who had never in reality parted with his title, caused himself to be placed of record as the real party in interest in lieu and place of Marti.

He then instituted a suit in partition of the property against Mary Agnes Wall and her brother, James J. Wall. In this suit he alleged himself to be the owner of an undivided half of the property, and the two defendants together the owners of the other undivided half. They excepted that though they held an interest in the property (evidently by inheritance) of a share in the succession of the deceased brother, Thomas J. Wall, that they did not own the interest of the absentee, Patrick J. Wall, and it was necessary that interest should be represented in the proceedings—that he should be made a party. The exceptions were referred to the merits.

The District Court rendered judgment in favor of the plaintiff, Martinez, and against Mary A. Wall and James J. Wall, decreeing a

partition of the property and ordering it to be sold at public auction to effect that partition on such terms as the parties might agree upon.

Later on, on joint motion of plaintiff and defendants, the property was ordered to be sold by the civil sheriff of the parish on terms which they had agreed upon.

The property was offered for sale and adjudicated to Mrs. Johanna Phillips, but she refused to comply with the bid.

A rule was taken upon her at the instance of the plaintiff and of the two defendants to show cause why she should not be required to accept title and pay the price.

The answer of the adjudicatee is not in the record, it having been mislaid, but there is no dispute between the parties as to what the defenses were. She urged that no tender of the property had been made to her and that the title offered was not a good one; that she could not safely take it in view of the outstanding rights and interest of the absentee, Patrick J. Wall. The District Court ordered her to accept title and comply with the bid, and she appealed to the Court of Appeal. That court reversed the judgment and the plaintiff has brought the correctness of that judgment before us under a writ of review.

Plaintiff maintains that the proceedings were valid and legal in manner and form as taken; that Patrick J. Wall disappeared before his mother's death; that there is nothing to show that he is alive; that if he be still alive he has manifested no intention to accept his mother's succession, although she died as far back as 1877; that there is nothing to indicate that if alive he ever will accept it.

That there is every reason to believe that he is dead; that rights of parties should not be held in abeyance upon mere possibilities; that if he should appear and accept the succession and have any rights in the premises he could look and should look to his co-heirs for his proportion of the price of the property which they may have received, and not to an interest in the property which in the meantime has been sold in partition proceedings; that the defendants having accepted the succession of their mother could not divide the acceptance, but could only take the succession as a whole; that, they being in possession and Patrick Wall not having been heard from, they must be held and taken to be the sole heirs *quoad* legal proceedings taken out and completed, before he makes an appearance, and so far as third parties who have acted on the faith of legal proceedings are concerned.

Appellee contests the correctness of these propositions. She insists that there is no presumption whatever that Patrick J. Wall is dead; that he is not old enough to-warrant such a presumption; that there could have been no warrant or justification for opening his succession; that the defendants took no proceedings to be placed in provisional possession of his property, as they might have done and should have done under Article 57 of the Civil Code; that the possession which they have held of the property has been a possession on their own account as part joint owners and not through and under their brother Patrick; that, so far from claiming that they held possession under and through him, they not only have disclaimed claiming his rights, but have admitted them to be still outstanding and valid; that the question of the indivisibility of their acceptance of their mother's succession could not arise unless nor until Patrick J. Wall had been affirmatively shown to have died, and died without heirs, or being alive that he had renounced his mother's succession; that there has been no sufficient interval between the mother's death and the present time to have cut off his rights by prescription, and he might reappear and successfully claim his share of the property; that as the sale has not been consummated, and she has not yet gone into possession, she is entitled to full protection.

It will be noticed that James J. Wall and Mary Agnes Wall, the defendants in the partition suit, after objecting to it—the partition—on the ground of the legal necessity of Patrick J. Wall being made a party to the proceedings, finally consented to it, and have now joined with the plaintiff in insisting that the purchaser should comply with her bid. The only party now complaining is the adjudicatee. We have, very recently, in Childs vs. Luckett, referred to the fact that objections to the legality of judicial proceedings, leading up to a judicial sale, can be much more strongly urged by a purchaser who has not yet gone into possession of the property under the sale.

We have examined the situation carefully. We do not think that the appellee can expect to be released from her bid because the title to the property may not be absolutely perfect. She has the right, however, to demand one reasonably safe. In dealing with this matter, we think we are authorized to take into consideration not only the proceedings themselves, but the probability or likelihood of their being attacked. Patrick J. Wall disapeared two or three years before his mother died. His whereabouts were unknown. He has made no appearance since. There

is no certainty as to his being dead, either at the time of the opening of his mother's succession or now. The most that can be said is that his existence was then and is now *not known*. We understand the law to be with reference to property which is actually vested in an absentee at the time of his disappearance, that it shall be first placed under the administration of a curator, and after a certain lapse of time placed in the *provisional possession* of his presumptive heirs on their application. The ownership of the property is not lost to the absentee by his mere disappearance, and his continued existence being unknown he is deemed to be its owner and it has to be dealt with from that standpoint until it ceases ultimately to be his under the circumstances and conditions fixed by law.

The rule is different as to "successions which shall be opened in favor of a person whose existence is not known." As to these, Article 77 of the Code declares: "In case a succession shall be opened in favor of a person whose existence is not known, such inheritance shall devolve exclusively on those who would have had a concurrent right with him to the estate or those on whom the inheritance should have devolved, if such person had not existed."

The words "whose existence is not known" gives a well-defined meaning; they do not refer to a person temporarily absent who may or may not be alive at the time of the death of another of whom, if he were present, or his existence known, he would be a legal heir. They refer to one whose absence has been so long prolonged and under such circumstances as to throw great doubt upon his existence, and great doubt as to whether he would afterwards be heard from.

A succession so devolving upon others by the disappearance of a presumptive heir is not lost to the latter. Article 78 declares that the provisions of the law on that subject do not affect his right of claiming the inheritance and any other rights which the absentee or his representatives or assigns may have, that these shall be extinguished only by the lapse of time which is established by prescription. In the meantime, however, the parties upon whom the succession has devolved are deemed the sole heirs and third parties are authorized to deal with them as such. While the returning heir is entitled to recover (C. C. 1031) his rights, he does so without prejudice to the rights which may have been acquired by third persons upon the property of the succession or lawful acts done by those having control of it. Article 1381 of the

Code declares that if, after the partition, an heir appears whose death has been presumed on account of his long absence, or whose right was not known, as if a second testament unknown until then should entitle him to inherit with the others, the first partition must be annulled and another must be made of all the property *remaining in kind,* and the value of whatever has been consumed or alienated, in order that he may have the share of the whole to which he is entitled. A case resembling this in some of its features is that of Union Bank vs. Choppin, 46 Ann. 629. In McCulloh vs. Minor, 2 Ann. 468, this court said: "It is the interest of the State that real property should have a visible and responsible owner. When heirs choose to relieve themselves from the charges of ownership and the payment of the debts of the succession, and await in security the improvements of property falling to them through the labor and enterprise of others, the law has wisely held that they should not be permitted to use their rights to the manifest injury of others."

The distinction which we have referred to between the relation of an absentee to property already vested in him at the time of his disappearance, and that which would have devolved upon him if present or his existence were known, is recognized in the French authorities. In Dalloz vs. Verge, No. 20, under Article 36 of the Code Napoleon, corresponding to our Article 77 of the Civil Code, it is said: "Les articles précédément commentés ont pour objet les biens que l'absent a laisses en s'eloignant de son domicile; les Articles 135 and 136 s'occupent des droits qui se sont ouverts depuis sa disparation." (J. G. Absence, 476.)

The position taken at the present time was not advanced at the trial of the case of Marti vs. Wall, in the matter of the tax adjudication. Miss Wall admitted the existence in the property of a right of joint ownership thereof of Patrick J. Wall and disclaimed making a claim to it. That recognition and admission may be of service to him should he ever return, but the issue here is not between Patrick Wall and his brother, nor between Martinez and the two defendants Wall, but between all three of them and the appellee, Mrs. Phillips, and the only question which we are to determine is whether or not the adjudicatee can safely take title to the property she has bought. We think she can safely do so.

Although unnecessary so to do, for the purposes of this case, it may not be amiss to say that it has been held in France that a recognition

by the party upon whom a succession has devolved by reason of the disappearance of the presumptive heir of the rights of that heir may be withdrawn under some circumstances. Patrick J. Wall is still absent; no claim has been advanced on his behalf, either by himself or any one claiming under him, adversely to his brother and sister, now before the court. There is no reason to suppose that any claim will be presented. We see no reason why the latter may not stand upon their exact legal rights in the premises under existing conditions.

For the reasons assigned, 't is ordered, adjudged and decreed that the judgment of the Court of Appeal, brought before us for review in this case, be and the same is hereby annulled, avoided and reversed, and it is now ordered, adjudged and decreed that the judgment of the District Court rendered in this cause, be and the same is hereby affirmed.