HIGGINS, Justice.
 

 The plaintiffs, claiming as heirs of Francois Zenon Boutte, instituted this action against Edgar H. Powell, Edwin P. Brady, Alexis Brian, and the heirs of the late A. Morgan Brian, to establish title to a certain tract of land in Jefferson Parish, under the provisions of Act 38 of 1908, alleging that neither the plaintiffs nor the defendants are in the actual possession of the property. The defendants assert title to the land as transferees under purported deeds dated June 26, 1936 from 162 other parties representing themselves to be the sole heirs of the decedent and who had caused themselves to be recognized as such and placed in possession of his property under an ex parte judgment dated June 26, 1936. This suit, filed on July 26, 1938, was dismissed by the trial judge on April 18, 1940, on certain exceptions which, on appeal, were overruled by us and the case was remanded to the district court for trial on the merits. 197 La. 409, 1 So.2d 677.
 

 Instead of going to trial on the merits, the defendants filed what they termed a plea in bar, based on Article 77 of the Revised Civil Code, a plea of estoppel, predicated on Article 1839 of the Revised Civil Code, and a plea of thirty years prescription under Article 1030 of the Revised Civil Code. The trial judge sustained the first two pleas but overruled the third one and dismissed the suit.
 

 The plaintiffs appealed. The defendants answered the appeal and again placed at issue, in the alternative, the plea of prescription of thirty years.
 

 The plaintiffs allege that Francois Zenon Boutte died intestate on December 9, 1863, without ascendants or descendants but leaving seven brothers and sisters, namely, Marie Louise Hyacinthe Boutte, Antoine Hilaire Boutte, Modeste Boutte, Louis Hilaire Boutte, Juan Leon Boutte, Celestine Boutte and Jean Baptiste Boutte, from whom they (the plaintiffs) are the direct descendants. They state that under the provisions of Article 897 of the Revised Civil Code the descendants of brothers and sisters of the decedent inherit to the exclusion of the descendants of the paternal uncle of the deceased, through whom defendants’ transferrers claimed the property.
 

 The defendants concede that the decedent left one brother, Leon, whose full name was Juan Leon Boutte, but say he moved from Louisiana in 1820 without any known issue and was never heard from thereafter. However, the alleged heirs of
 
 *321
 
 this man are some of the parties plaintiff herein.
 

 The 162 persons named in the ex parte judgment of June 26, 1936, claim heirship through a paternal uncle of the decedent, namely, John Baptist Boutte. The defendants aver that John Baptist Boutte, uncle of Francois Zenon Boutte, died leaving as his sole heirs six children, namely, Godefray Boutte, Phillipps Boutte, Mrs. Azalie Boutte Bel, Mrs. Hermione Boutte Mandelli and Thisaphene Boutte. They assert that as far as was “known” the absentee (Juan) Leon Boutte, brother of the deceased, left no heirs and, therefore, Francois Zenon Boutte’s first cousin, Thisaphene Boutte, ancestor of the 162 parties named in the ex parte judgment, was the nearest of kin and sole heir of the decedent. It was on these representations that these 162 alleged sole heirs had themselves recognized and placed in possession of the land in question by the ex parte judgment of June 26, 1936. On the same day, these persons transferred a 1142/2304 interest in the land in dispute to the defendant, Edgar H. Powell, who had his interest recognized in the judgment and he at once transferred a half thereof or a 571/2304 interest therein to Messrs. Alexis Brian and A. Morgan Brian, who had worked with him on the title and had represented the parties in obtaining the ex parte judgment. On September 7, 1936, the Brians transferred all surface rights in their interest in the land to the defendant, Edwin P. Brady. It developed on the trial of the pleas in question that Powell, a title abstractor, having learned that the property belonged to the estate of Francois Zenon Boutte, set out to locate his heirs, and with the assistance of Messrs. Brian and Brian, contingent fee contracts were signed by him and the 162 claimants, for the recovery of the land for them, the 1142/2304 interest being transferred to him under the provisions of the agreements for services rendered. Powell transferred one-half of the above interest to Messrs. Brian and Brian, in accordance with their understanding.
 

 The plea in bar is based solely on the ground that the defendants herein “believed” at the time they acquired their interests in the property, that the 162 persons named in the ex parte judgment were the heirs of the deceased and, therefore, even admitting that they were in error in so concluding, nevertheless they are entitled to hold the land against the real heirs and owners.
 

 The case has not been tried on the merits and one of the issues involved there is whether Leon Boutte, deceased’s brother, moved from Louisiana in 1820 and was an absentee whose existence was unknown in 1863 when decedent died,' and whether he had children or descendants, who inherited by representation or directly from him, under the provisions of Articles 897 and 1493 of the Revised Civil Code. There was no evidence taken contradictorily on these issues as the defendants objected on the ground that it was immaterial because they had to show only that they “believed” Leon Boutte was the missing brother of the decedent, without known issue. The trial
 
 *323
 
 judge sustained the objection and so limited the proof.
 

 The defendants by objecting to the plaintiffs’ evidence as immaterial, on the ground that they and their transferrers “believed” they were dealing with the right heirs and lawful owners, necessarily conceded, for the purpose of considering the plea in bar, that the plaintiffs would have been able to establish that Leon Boutte, brother of the decedent, was not an absentee and had children who, in turn, left the descendants presently claiming title to the property as heirs, and also that Francois Zenon Boutte had three other brothers and three sisters who also left the descendants presently claiming the property as heirs. The plaintiffs’ statements that the 162 parties, who transferred the half interest tp the defendants, Powell and the Brians, were not the lawful heirs of deceased but were strangers to his succession must also be assumed to be trite.
 

 Article 77 of the Civil Code appears in Chapter 3 of Title III, entitled “Of the Effects of Absence Upon the Eventual Rights which may belong to the Absentee”. There are four articles in that chapter, to-wit:
 

 “(76) Whoever shall claim a right accruing to a person whose existence is not known, shall be bound to prove that such person existed at the time when the right in question accrued, and until this be pfoved, his demand shall not be admitted.
 

 “(77) In case a succession shall be opened in favor of a person whose existence is not known, such inheritance shall devolve exclusively on those who would have had a concurrent right with him to the estate, or on those on whom the inheritance should have devolved if such person had not existed.
 

 “(78) The provisions of the two preceding articles shall not affect the right of claiming the inheritance and’ any other rights which the absentee or his representatives or assigns may have; these shall be extinguished only by the lapse of time which is established for prescription.
 

 “(79) As long as the absentee shall not appear, or a suit shall not be brought in his name, those who shall have been put in possession of the inheritance, shall have a right to the proceeds by them received bona fide.”
 

 It will be noted that Article 78 of the Revised Civil Code specifically provides that the absent heir will not be divested of his right of inheritance unless it is extinguished by prescription.
 

 If the provisions of Article 77 of the Revised Civil Code are to be interpreted as granting to the heirs of concurrent rights with the party whose existence is not known, the share of the absentee’s inheritance, in exclusive ownership, then, it was an idle act for the law-writer in Article 78 of the Code to recognize the absentee’s right and interest in the inherited property by providing that this right shall be extinguished only by the lapse of time, which is established for prescription; and it was equally vain for them to state that if the missing heir appeared before that time had elapsed, he could claim his right. Clearly, the party whose existence is not
 
 *325
 
 known either lost or did not lose his right to inherit because exclusive ownership in the heirs with concurrent rights is the total destruction of part ownership in the party, whose existence is not known. These respective rights cannot exist simultaneously. The law-writer recognized this to be true because Article 78 expressly states that the two preceding articles shall not affect the party whose existence is not known or his representatives in claiming his inheritance unless those rights are prescribed. Therefore, we have an express restriction on the provisions of Articles 76 and 77 of the Revised Civil Code.
 

 In Succession of Williams, 149 La. 197, 88 So. 791, 794, the husband, whose wife had predeceased him, died leaving three children, one of whom had disappeared several years prior to his death, leaving two daughters. One of the children of the deceased claimed the one-third interest of his lost brother to the exclusion of the absentee’s forced heirs or two daughters, under the provisions of Article 77 of the Revised Civil Code. From an adverse judgment he appealed and this Court, in affirming the judgment, stated:
 

 “This court has not heretofore had occasion to decide whether articles 76 and 77 of the Code are applicable to a case where the -claims of those who would have a concurrent right with the absentee, if he were known to be alive, come in conflict with the claims of descendants, forced heirs, of the absentee, who has not been heard of for more than five years and whose existence is therefore not known. That is the -case before us; and our opinion is that the articles 76 and 77 of the Code are not applicable. If they were applicable, they would be in conflict with article 57, which confers upon the presumptive heirs of an absentee the absolute right to be placed in provisional possession of his estate, upon proving that he has been absent from the place of his domicile or habitual residence continuously, and has not been heard of, for five years.
 

 ******
 

 “An analysis of the language of article 77 also convinces us that it is not applicable to a case where the persons who claim that they ‘would have had a concurrent right with him,’ whose existence is not known, come in conflict with descendants, forced heirs, of the person whose existence is not known. Article 77 applies only to a right of inheritance. Article 76, on the contrary, applies to any right which is claimed to have accrued ‘to a person whose existence is not known’.
 

 ******
 

 “We must bear in mind that articles 76, 77, 78 and 79, comprising the entire chapter 3 of title III of the Revised Code, treat only of the class of absentees whose existence is not known and as to whom the law does not establish a presumption, either that they are alive or that they are dead. Chapter 3 therefore provides for the
 
 temporary disposition
 
 to be made of the rights accruing to that class of absentees whose existence is not known, unless or until it shall be proven whether they were dead or alive when the rights accrued.
 
 Article 78 declares that the provisions of the two preceding articles, 76 and 77, shall not af
 
 
 *327
 

 feet the right of the absentee if he should eventually return, or the right of his legal representatives or assigns, on proof of his death, of claiming the inheritance and any other rights which the absentee or his representatives or assigns may have; which rights shall be extinguished only by the lapse of time which is established for prescription.
 
 And article 79 declares that those who shall have been put in possession of the inheritance shall have a right to the proceeds received by them in good faith, as long as the absentee shall not appear or a suit shall not be brought in his name.” (Italics ours.)
 

 In Long et al. v. Chailan et al., 187 La. 507, 175 So. 42, 46, the suit was filed under Act 38 of 1908 to establish title to real estate where neither party litigant was in possession thereof. The plaintiffs claimed title to half of the land by inheritance from their mother, who died in 1886. It appears that on March 2, 1901, or more than fourteen years after the mother’s death, the sheriff, by virtue of a writ of fieri facias issued under a judgment rendered against the father for his personal debt sold the whole of the land in question to George Signor. In 1903, Signor sold the property to Mrs. Alice C. Love, who was the daughter of plaintiff’s father by a previous marriage, or a half sister, who subsequently became Mrs. Chailan, from and through whom the defendants, in good faith, by mesne conveyances either directly or indirectly acquired their alleged rights. In annulling the judgment and overruling the defendants’ exceptions of no cause or right of action, the Court said:
 

 “* * * if a person who intends to bring a petitory action knows or anticipates that the defendant will depend upon a sale from one who was not the owner of the property, the plaintiff is not obliged to set up the sale and sue to annul it. * * *
 

 “In this connection, it is a matter of no moment to say that a sale of property not owned by the seller is not null but only voidable because the owner may ratify the sale. Article 2452 of the Civil Code does not declare that such a sale is only voidable at the instance of the owner of the property, but declares: ‘The sale of a thing belonging to another person is null.’ And in fact such a sale is null if the owner of the property does not ratify the sale. * & &
 

 “Another argument of the defendants in support of their exception of no cause or right of action is that they acquired their titles on their faith in the public records, and that the title which the plaintiffs are asserting was not a matter of record when the defendants acquired their title. The defendants cite the leading case on the subject, McDuffie v. Walker, 125 La. 152, 51 So. 100, maintaining, according to article 2266 of the Civil Code, that a sale or other contract or a judgment affecting immovable property does not affect third persons until it is recorded. So far as that argument has reference to the imperfect description in the deed by which Henry F. Long, Sr., is said to have acquired the property in dispute from L. P. Noland, on November 23, 1878, the argument has reference to the merits of the case. So far as the argument has reference to the fact that the plaintiffs’ inheriting a title from
 
 *329
 
 their mother was not a matter of record, the argument cannot prevail, because, according to the decisions which we shall refer to hereafter, it is well settled that article 2266 of the Civil Code, or the doctrine of McDuffie v. Walker, is not to be construed so as to defeat the rights of heirs who inherit from their mother her half interest in the community property, bought in the name of her husband.”
 

 Therefore, even if it be conceded that the defendants herein acted in good faith (concerning which issue we refrain from expressing any opinion), they did not thereby obtain any better title than their transferrers had acquired by virtue of the ex parte judgment. To hold that they did get a valid title because of good faith would be equivalent to substantially writing out of our law the articles of the Revised Civil Code on “Prescription of ten years” which require a deed translative of title, continuous and open possession, and good faith. R.C.C. arts. 3479, 3451 and 3453. The bona fide possessor in whose favor prescription has not accrued retains the fruits but does not acquire the title to the property. R.C. C. arts. 502 and 503.
 

 Articles 1493, 1494 and 1495 of the Revised Civil Code protect the inheritance of forced heirs, which include descendants of whatever degree. The second paragraph of Article 1493 of the Code specifically provides “* * * under the name of children are included descendants of whatever degree they be, it being understood that they are only counted for the child they represent.” As pointed out by this Court in the Succession of Williams, supra, if it be held that under the provisions of Article 77 of the Code, the other heirs of concurrent right take the inheritance exclusively, then it necessarily follows that certain forced heirs would thereby be deprived of their legitime. It is most unlikely that the authors of the Revised Civil Code would have taken such precaution to protect the rights of descendants of whatever degree against deprivation of their legitime and at the same time, elsewhere in the Code, intentionally exclude them solely on the ground that the existence of their father or mother was unknown. Furthermore, it appears that there has been much controversy over Article 77 of our Revised Civil Code and the law of France on this subject, as to the proper construction to be placed upon them. Tulane Law Review, Vol. IV, p. 273, Subject, Heirs of Absentees (1929-1930). The author of this commentary points out that the court, by strictly applying the provisions of Article 77 of the Code, would be placed in the unenviable position “of reaching the inequitable result of debarring a man’s children from that which should in all justice be given to them.” Indubitably this was not the intention of the framers of the Code.
 

 The defendants rely upon the cases of Martinez v. Wall et al., 1902, 107 La. 737, 31 So. 1023; Pfister v. Casso et al., 1926, 161 La. 940, 109 So. 770; and Succession of Butler, 1928, 166 La. 224, 117 So. 127. We shall discuss them in the above order.
 

 In Martinez v. Wall, supra, the plaintiff instituted suit against two of his co-owners in indivisión for the partition of the
 
 *331
 
 property. They appeared and excepted on the ground that their absent brother was a necessary party and should be represented. The exceptions were referred to the merits and subsequently abandoned. Judgment was rendered in favor of the plaintiff and against the two defendants, ordering a partition of the property by licitation. Mrs. Phillips, the adjudicatee at the public auction, refused to comply with her bid and a rule was taken against her to show cause why she should not be required to accept title and pay the purchase price. She urged that the title offered was not a good one and she could not safely take it because of the outstanding rights of the absentee. The court ordered her to comply with her bid. She appealed and the Court of Appeal annulled the judgment, whereupon a writ of review was granted on the plaintiff’s application to this Court.
 

 Julia Wall died in July 1877, leaving four children, one daughter and three sons. One of the sons died subsequent to his mother and another son, Patrick J. Wall, disappeared before his mother’s death or in 1874, and there was nothing to show that he was alive, and there was every reason to believe that he was dead at the time the suit was tried and thereafter. The Court discussed the provisions of Articles 57, 77, 78, 1031 and 1381 of the Revised Civil Code and stated [107 La. 737, 31 So. 1025]:
 

 “* * * We do not think that the appellee (Mrs. Philips) can expect to be released from her bid because the title to the property may not be absolutely perfect. She has the right, however, to demand one reasonably safe. In dealing with this matter, we think we are authorized to take into consideration not only the proceedings themselves, but the probability or likelihood of their being attacked. Patrick J. Wall disappeared two or three years before his mother died. His whereabouts were unknown. He has made no appearance since. There is no certainty as to his being dead, either at the time of the opening of his mother’s succession or now. The most that can be said is that his existence was then, and is now, not known. * * *
 

 “the issue here is not between Patrick Wall and his brother, nor between Martinez (plaintiff and co-owner) and the two defendants Wall, but between all three of them and the appellee, Mrs. Phillips, and the only question which we are to determine is whether or not the adjudicatee (Mrs. Philips) can safely take title to the property she has bought. We think she can safely do so.
 

 “* * * Patrick J. Wall is still absent. No claim has been' advanced on his behalf either by himself, or any one claiming under him, adversely to his brother and sister, now before the court. There is no reason to suppose that any claim will be presented. * * *” (Brackets ours.)
 

 This Court annulled the judgment of the Court, of Appeal and reinstated and affirmed the judgment of the district court, requiring the adjudicatee to accept title to the property.
 

 Manifestly, the absent presumptive heir, even if he had been present, could not have prevented the sale of the real prop
 
 *333
 
 erty, indivisible in kind and owned in indivisión, at public auction for the purpose of effecting a partition thereof. Arts. 1289, 1307 and 1308, R.C.C. Clearly, the only right he would have had would have been to claim his pro rata share of the proceeds. The instant case is not a partition proceeding and the plaintiffs as descendants, the forced heirs of their respective parents are claiming directly and by representation as the real heirs and owners of the property in question.
 

 In the case of Pfister v. Casso et al., the plaintiff, a sister of the deceased, Mrs. Bella Casso, instituted a partition suit against her nephews and nieces, children of another predeceased sister. The surviving husband of the deceased intervened and claimed the property belonged to the community formerly existing between himself and his deceased wife. The court concluded that the property belonged to the deceased wife’s separate estate and decreed that it be sold at public auction to effect a partition and the net proceeds distributed — one-half to the plaintiff and the other half to the defendants in equal proportions, because the deceased’s brother, who had disappeared twenty years before her death, had never been heard from since, and there was no one before the court making any claim in his behalf or through him.
 

 Again, we observe that even if the absentee, who was represented by a curator ad hoc, were present, he could not have prevented the sale of the real estate owned in indivisión, at public auction, to effect a partition. He would have had the right only to claim his share of the proceeds of the sale.
 

 In Succession of Butler, the deceased died in 1914, leaving real and personal property and four surviving children. One of the sons left the State eleven years pri- or to his mother’s death and had not been heard from since 1904 and his existence was unknown. His wife died without issue. The succession was opened and a curator ad hoc was appointed to represent the absentee, against whom the three other children instituted proceedings contradictorily, resulting in a judgment whereby the property belonging to the succession of the deceased was sold and the entire estate partitioned among the four heirs, each being sent into possession of their virile share thereof. Later the three children applied to the court to be recognized as the sole heirs of the deceased and to be placed in possession and absolute ownership of the entire estate including the one-fourth share of the absentee. The trial judge refused to do so but proposed to place them in provisional possession of the absentee’s share in accordance with the provisions of Article 57 of the Revised Civil Code. Originally this Court upheld the ruling of the trial judge but, on rehearing, cited the provisions of Article 77 of the Revised Civil Code and Pfister v. Casso, 161 La. 940, 109 So. 770, wherein Martinez v. Wall, supra, was referred to, and reversed its previous holding and placed the three heirs in absolute possession of the estate of the decedent, including the part of the proceeds of the sale placed under the care of the curator representing the absentee. It was
 
 *335
 
 stated that there was no one before the court
 
 “to
 
 contest the relief prayed for by the relators” and should the absentee return, his rights were fixed and protected by law.
 

 Unquestionably the sale of the absentee’s interest in the real estate was valid, he having been represented by the curator and the court having jurisdiction of the res could order the property sold to effect a partition. It is significant that although the relators prayed for absolute ownership and possession, the decree of the court granted them absolute possession of the proceeds of the sale but not absolute ownership. It is also noted that the absentee did not have any descendants, his wife having died without issue, and that there was no one before the court claiming in his behalf or through him the proceeds of the sale. As a matter of law, if the absentee were dead, then his brother and sisters would have been his sole heirs as his nearest kin.
 

 In the instant case, we are not dealing with a partition matter and the defendants are not purchasers at public auction held under an order of court directing that real estate be sold for the purpose of effecting a partition. Furthermore,, there are numerous plaintiffs before the court claiming as descendants of the decedent’s sole heirs, who are said to have been in existence and known at the time of his death.
 

 The defendants argue that the plaintiffs have the right only to sue their transferrers and not them. If the plaintiffs, as the alleged real heirs, are relegated to an action against the 162 parties, who assigned or transferred a half interest in the property to Powell and the Brians, the question arises what could they sue for since there was no cash payment made by Powell and the Brians or property exchanged by them, the sole consideration being services rendered on contingent contracts to secure the property for their transferrers.
 

 It is our opinion that the so-called plea in bar is not well founded.
 

 The plea of estoppel is founded upon Article 1839 of the Revised Civil Code, which provides:
 

 “But if the person, who is really entitled to the quality assumed by the one with whom the contract is made,
 
 has contributed to the error by his neglect
 
 or by design, it will not vitiate the agreement. And in the case above stated, a payment to, or a compromise with one,
 
 whom the true heir suffered to remain in possession of the inheritance, and to act as heir, without notice, would be valid.”
 
 (Emphasis ours.)
 

 The defendants do not suggest that the plaintiffs misled or induced them to change their position in any way except by their long silence and inaction. The undivided interests in the property transferred to Powell and the Brians by the alleged 162 heirs represented nothing more than the contingent fee interest under the contracts with them to obtain the land for them. Powell and Alexis Brian testified that they acted only after they had investigated to the point where they “believed” or “thought” they had the right heirs but
 
 *337
 
 Powell admitted he did little research work on the subject. Brian did not make a thorough search for birth, marriage and death records of the heirs.
 

 The plaintiffs introduced the testimony of E. J. Vigneaux, who stated that he had made an investigation and assembled the family birth, marriage and death records. When the plaintiffs sought to prove that Leon Boutte, brother of the deceased, left descendants who were before the court as parties plaintiff and that Francois Zenon Boutte, the deceased, left three other brothers and three sisters who died leaving descendants, all of whom were parties plaintiff, the defendants objected on the ground that it was immaterial to the issue because they had acted in good faith or in the belief that they had the right heirs whom they had recognized by the ex parte judgment. The trial judge sustained the objection but permitted the plaintiffs to .annex certain evidence to a bill of exception. The evidence tends to show that a diligent search would have substantially revealed to the defendants the same family birth, marriage and death records as the plaintiffs discovered. The petitioners did not do anything that might have caused the defendants to err, if error were committed. Three of them elected after their investigation and of their own volition, to obtain an ex parte judgment placing certain parties in possession as sole heirs of decedent, seventy three years after his death. The plaintiffs did nothing to mislead Brady, who admits he relied on Alexis Brian’s opinion only.
 

 In Long v. Chailan, supra, in connection with the plea of estoppel, this Court, at page 528 of 187 La., at page 49 of 175 So., said:
 

 “As to the long silence and delay in the bringing of this suit, especially on the part of the two plaintiffs who were not plaintiffs in the former suits, it was said in Pearce v. Ford, 124 La. 851, 50 So. 771, that mere silence and delay could not cause a loss of title to property except by effect of the laws of prescription. In Charbonnet v. State Realty Co., 155 La. 1044, 99 So. 865, it was held that a judgment dismissing a suit on the ground of abandonment, for a neglect to prosecute the suit for five years, under the provisions of article 3519 of the Revised Civil Code of 1870, as amended by Act No. 107 of 1898, was not a basis for a plea of estoppel or res judicata. * * *”
 

 In Davis et al. v. Young, 36 La.Ann. 374, the Court said:
 

 “The plea of estoppel, as we deduce from the argument of the counsel, seems to rest alone on the extreme forbearance, long continued, shown by the plaintiffs to those who for so many years occupied, cultivated and reaped the fruits of their land. If prescription, through such forbearance, has not deprived them of their ownership— which we have held was not the case — we cannot exactly understand how it has created any bar to plaintiffs’ assertion of their right, or furnished defendant a new mode or contrivance for acquiring, her neighbor’s land. There is neither merit nor meaning in the plea.”
 

 
 *339
 
 In Pearce et al. v. Ford et al., 124 La. 851, 50 So. 771, 772, the Court declared:
 

 “The other contention is that the coheirs of Eliza Pearce Marshall consented to her taking the property, and abandoned their rights to it, as is shown by their silence and inaction from 1882 to the filing of this suit, in April, 1907;
 
 but we know of no law by which silence cmd inaction will bring about the loss of title to real estate, unless in connection with the prescription established by law.”
 
 (Italics ours.)
 

 In Tyson et al. v. Spearman et al., 190 La. 871, 183 So. 201, the Court held that a litigant could not successfully plead that his adversary was estopped to assert his rights by mere lapse of time where he did so within the period prescribed by law. The Court, on page 896 of 190 La., on page 209 of 183 So., also stated:
 

 “This Court said, in the case of Maxwell v. W. B. Thompson & Co., 175 La. 252, 143 So. 230, 233, that
 
 notice,, in its accepted legal sense, means such information on the part of the person charged with notice as would put a prudent person on inquiry to ascertain the true or actual facts¡
 
 and in the . case of National Park Bank v. Concordia Land & Timber Company, 159 La. 86, 105 So. 234, 239, that
 
 notice of facts which ought to excite inquiry, and which, if pursued, would lead to. knowledge of other facts operates as notice thereof,’
 
 (Italics ours.)
 

 “It is stated in Ruling Case Law, Volume 20, under the title Notice, Section 7, that: '' •
 

 "Whatever fairly puts a person on inquiry is sufficient notice, where the means of knowledge axe at hand; and if he omits to inquire, he is then chargeable with all the facts which, by a proper inquiry, he might have ascertained.
 
 * * *
 
 Means of knowledge with the duty of using them are, in equity, equivalent to knowledge itself. Where there is a duty of finding out and knovdng, negligent ignorance has the same effect in law as actual knowledge.'
 
 (Italics ours.)
 

 “We therefore conclude that our learned brother below properly overruled defendant’s plea of estoppel under the provisions of Article 1839 and en pais.”
 

 See also National Park Bank v. Concordia Land Co., 159 La. 86, 105 So. 234.,
 

 The authorities cited by the defendants’ attorneys on the plea of estoppel, namely, Marshall v. Smedley, 166 La. 364, 117 So. 323 and Hammon v. Sentell, 160 La. 589, 107 So. 437, are discussed in the Tyson et al. v. Spearman et al. case, supra. In the first case this Court, on rehearing, concluded that estoppel had not been pleaded and in the other one it sustained the plea, on the ground that the plaintiffs’ actions therein had misled the defendant, an innocent and bona fide party, to his prejudice. The Court, in the Tyson case, found that the defendants had sufficient available information to place them on notice and that they could have ascertained that the plaintiffs had an interest in the land and, therefore, their own error and hot the plaintiffs’ acts caused them to make the mistake.
 

 
 *341
 
 Reference to the fact that Ernest Boutte and others, who are some of the 162 parties that transferred the half interest to Powell and the Brians, instituted suit against Edwin P. Brady et al. (on March 24, 1928), and that the action was dismissed is unimportant for two reasons: First, it involved the land known as the “Little Temple Tract” which is not the property presently in controversy and, second, the 1079 heirs appearing as the plaintiffs herein were not parties to that suit.
 

 The plea of estoppel is without merit.
 

 In opposition to the plea of prescription plaintiffs point out that the record at this time shows that for 73 years all of the parties claiming as heirs were silent and none of them was in possession of the property in dispute; that the judgment placing the defendants’ authors in title in possession was rendered on June 26, 1936 and the alleged rights of Powell and the Brians were almost simultaneously acquired from them and Brady’s alleged interest was obtained on September 7, 1936; that these were the first indications of any claims of adverse ownership to petitioners or that the defendants’ authors in title were pretending to be the sole heirs or owners of the property; and that the present suit was filed on July 26, 1938.
 

 The defendants’ contention now made in connection with the plea of prescription of thirty years was previously presented to this Court in this case, 197 La. 409, 1 So.2d 677, 682, under the exception of no cause of action, and we disposed of it, as follows:
 

 “* * * The defendants . Brian also filed an exception of no cause of action, their contention being that plaintiffs are precluded from bringing this suit by the prescription of 30 years, established by Article 1030 of the Revised Civil Code. Their argument is that the ex parte judgment sending defendants into possession was an acceptance of the succession by the parties to it, and that this acceptance cut off the right of any other heirs to accept after the 30-year period had lapsed, under the doctrine announced in Bendernagel v. Foret, 145 La. 115, 81 So. 869, and Tillery v. Fuller, 190 La. 586, 182 So. 683.
 

 “The ruling in those cases is not applicable here, for the reason that, on exception of no cause of action, the well-pleaded allegations of plaintiffs’ petition must be accepted as true, and plaintiffs allege, in effect, that the 162 persons referred to were strangers to the succession. If that be true, their acceptance thereof did not have the effect of cutting off plaintiffs’ rights. The paramount question raised by plaintiffs’ pleadings is whether they are, in fact, the sole heirs of Francois Zenon Boutte, as they allege. That question will have to be determined at the trial of the case on its merits. These exceptions of no cause of action are without merit and should have been overruled.”
 

 As heretofore mentioned, the case has not been tried on its merits and having reached the conclusion that the plea in bar and the plea of estoppel are not well founded, the defendants insofar as this defense is concerned aré in the identical position
 
 *343
 
 they were when we originally considered the matter.
 

 Counsel for the defendants have referred us to the case of Succession of Tyson, 186 La. 516, 172 So. 772. From what we have already stated with reference to the pleas herein it is obvious that to a great extent facts which will be pertinent to the merits are also involved here but have not been developed herein due to the defendants’ objection limiting the proof to their good faith. Certainly, we cannot assume those facts to be against the plaintiffs. For instance, the petitioners allege that the 162 parties who transferred the half interest to Powell and the Brians were strangers to the succession of the deceased. This Court, in the above cited case, in considering the plea of prescription of thirty years, where one heir accepts the succession and the other fails to do so, recognized the distinction between such a situation and one where there was a possessor of the property without title and without the benefit of prescription acquirendi causa.
 

 The plea of prescription is untenable.
 

 For the reasons assigned, the judgment appealed from is annulled, the pleas in bar, estoppel, and prescription are overruled, and the case is remanded to the district court for trial on the merits; costs of the appeal to be paid' by the defendants and all other costs to await the final decision of the case.
 

 O’NIELL, C. J., recused.