JANVIER, Judge. '
This is a suit for a declaratory judgment, Mrs. Edith Levenberg Bierhorst, the prospective vendor of two lots of ground in New Orleans, seeks a judgment declaring that her title to the property is “full, complete, absolute, unconditional and merchantable.” The prospective purchaser of the property, Philip M. Kelly, who contends that the title of Mrs. Bierhorst is not full and complete, is made a party defendant, and also made defendants and cited through a curator-ad-hoc are two absentee brothers of Mrs. Bierhorst who, it is alleged, have not been heard from for many years.
There was judgment declaring the title of plaintiff to be full, complete, and merchantable, and from this judgment Kelly and the curator-ad-hoc of the two absent brothers have appealed.
The purchase price which had been agreed upon between the prospective vendor and the prospective vendee was $6,000, but when the appeals were taken to the Supreme Court of Louisiana, they were transferred to this Court, the Supreme Court stating that
“no question of specific performance * * , * is presented in the case * * * there really is no issue in contest between the parties.” [66 So. 2d 792.]
The question which is presented is purely one of law. The facts are not in dispute.
The property in question, until her death in 1933, was owned by Mrs. Cecile B. Levenberg, the mother of the petitioner. In addition to the petitioner, Mrs. Leven-berg was the mother of four other children, two daughters and' two sons, and when she died, she left many pieces of real estate, including that with which we are now concerned and which is described as follows :
Two Certain Lots of Ground, together with all the buildings and improvements thereon, and all the rights, ways, privileges, servitudes, appurtenances and advantages thereunto belonging or in any wise appertaining, situated in the Second District of New Orleans, in Square No. 164, Lakeview, bounded by Colbert (Late Iberville), Louisville, and Porteous (late Twiggs) Streets, and Fillmore Avenue, designated as Lots 23 and 24 on plan of survey made by E. L. Rustís, Civil Engineer and Surveyor, dated April 9th, 1947, a print of which is annexed to an act passed before Charles L. Rivet, Notary Public, on January 15th 1953, and according to which said Lots 23 and 24 adjoin each other and measure each, twenty-five feet (25') front on Colbert Street, the same width in the rear, by a depth between equal and parallel lines of one hundred twenty-nine feet (129'), Lot No. 24 forming the corner of Colbert and Porteous Streets.
*113 Her succession was duly administered, certain real estate was sold, and certain particular legacies were delivered, and, in 1940, the three daughters of the decedent (the present plaintiff and her two sisters) filed, in the succession proceedings, a petition in which they prayed that they be sent into possession of the balance of the estate, which included the property in question. This petition was based on the allegations that at the time of the death of the decedent, the existence of the two sons was unknown; that one son had disappeared and had not been heard from since 1931, and that the other had disappeared and had not been heard from since 1919. The petition also alleges that, at the time of the opening of the succession of the mother, the three daughters, acting on the assumption that the two sons (their brothers) were absent “heirs” within the contemplation of Article 47 of our LSA-Civil Code, had treated them as such and had provoked the appointment of an attorney to represent them as absent “heirs.” The petition further alleges that, since the existence of the two sons was unknown at the time of the opening of the succession of the mother, they should not have been treated as absent heirs within the contemplation of Article 47 of our LSA-Civil Code, but should have been treated as “absentees” within the contemplation of Articles 76, 77, 78 and 79 of the LSA-Civil Code, and that as a result the rights which the two sons would have had, had their existence been known, should, since their existence was unknown have devolved exclusively upon the three sisters. On this petition there was judgment recognizing the three daughters of Mrs. Lev-enberg, the petitioner, and her two sisters as sole heirs of the decedent and sending them into possession of the property which is involved here. Later the interests of the two other sisters were transferred to Mrs. Bierhorst.
On January 21, 1953, respondent, Philip M. Kelly made a written offer to purchase the property for $6,000 cash. This offer was accepted in writing by Mrs. Bierhorst. Kelly then refused to consummate the transaction, taking the position that the judgment under which the three daughters had been sent into possession of the property had not and could not vest in them a clear and merchantable title.
It is the contention of Mrs. Bierhorst that that judgment did vest a clear and merchantable title in her and her two sisters' and that the rights, of the two brothers or either of them, if either should be in existence, are limited to the right to make claim against their sisters for their proper share of the proceeds of the property, but that such rights as they had or either of them ever had cannot in any way affect the title to the real estate itself.
On behalf- of the petitioner our attention is directed to the decision of our Supreme Court in Succession of Butler, 166 La. 224, 117 So. 127. A reading of that decision discloses that, at her death in 1914, the decedent, Mrs. Sarah Butler, left an estate consisting of real and personal property. There were four children born to Mrs. Butler by a former marriage. Three of these children were present in Louisiana at the time of the death and the fourth, Francis Lory, Jr., had left the state eleven years before the death of the decedent and had not been heard from since 1904 ten years before the decedent’s death. On the death of the mother, the three children who were present provoked the opening of the succession, and, after having a curator-ad-hoc appointed to represent their absent brother whom they alleged to be an absent heir, they had themselves and the absent brother recognized as sole heirs of their mother and sent into possession of her estate.
In the succession proceedings, the three children who were present then provoked a partition contradictorily with the curator-ad-hoc of the absent brother, and, after the completion of the partition by licitation, they were sent into possession, each of an undivided share of the proceeds, and the share of the absent brother was placed to his credit in a bank in New Orleans. Later the three children, who had provoked the opening of the succession and the partition, brought the proceeding which finally reach *114 ed the Supreme Court, and they averred that they had been in error in treating their absent brother as an absent “heir” and in having the said absent “heir” recognized and sent into possession of a share of the estate, and they further averred that the said brother was an “absentee” whose existence was unknown and they prayed that they be sent into “the possession and absolute ownership” of the mother’s estate including the share which had been placed to the credit of the absentee, taking the position that since the “existence” of the brother was unknown, he was not an absent “heir” but was an “absentee”, and that therefore the share of the inheritance which would have passed to him devolved exclusively on those three who were present. They relied upon Article 77 of our LSA-Civil Code which reads as follows:
“In case a succession shall be opened in favor of a person whose existence is not known, such inheritance shall devolve exclusively on those who would have had a concurrent right with him to the estate, or on those on whom the inheritance should have devolved if such person had not existed.”
The Supreme Court, holding that the situation was controlled by that article of the Code, ordered that a writ of mandamus issue, commanding the Judge of Division “B” of the Civil District Court for the Parish of Orleans to sign a judgment recognizing the three children who were present and sending them into “possession” of that portion of the estate of the deceased mother which, under the original judgment, had been recognized as belonging to the absent brother.
The facts found in Succession of Butler are remarkably similar to those which are presented here. However, counsel for the respondent Kelly and for the curator-ad-hoc of the absentees say that a distinction lies in the fact that there the real estate was properly sold in the partition proceeding and that there can be no doubt that a good, merchantable title to the real estate resulted from the partition by licitation, but they maintain that here, since the real estate was not sold in a partition proceeding, no good title could be transferred by Mrs. Bierhorst since the absentees at any time prior to the accrual of prescription of thirty years, should they appear, might claim the inheritance, and that, if either did so, he would be entitled to the real estate itself and could not be relegated to the proceeds of the sale thereof. They base this contention on Article 78 of our LSA-Civil Code which reads as follows:
“The provisions of the two preceding articles shall not affect the right of claiming the inheritance and any other rights which the absentee or his representatives or assigns may have; these shall be extinguished only by the lapse of time which is established for prescription.”
To this contention counsel for petitioner counter by calling attention to Article 79 of the LSA-Civil Code which reads as follows:
“As long as the absentee shall not appear, or a suit shall not be brought in his name, those who shall have been put in possession of the inheritance, shall have a right to the proceeds by them received bona fide.”
Counsel for Kelly and for the curator-ad-hoc, realizing the danger to their contention of Article 79, say that its effect must be limited to movables or to the proceeds of real estate which has been legally sold in a partition proceeding, but that the article does not mean that when real estate is involved it may be converted into cash by those heirs who are present. They base this contention on the use of the word “inheritance” as it appears in the above quoted Article 79 and on certain language, used by the Supreme Court in Dugas v. Powell, 207 La. 316, 21 So.2d 366, 372. They strenuously assert that, since it is provided in Article 79 that the absentee who later appears may claim the “inheritance”, he may not be forced to accept in place of the inheritance the proceeds thereof.
*115 This argument seems to be answered in Article 79 which expressly declares that so long as the absentee does not appear, those who have been sent into possession in good faith “have a right to the proceeds”.
In Dugas v. Powell, supra, are found facts which present a legal situation somewhat similar to that which confronts us. There the Supreme Court discussed Succession of Butler, supra, and said that the sale of the interest of the absent son of Mrs. Butler was valid since the Court unquestionably had the right to order the property sold to effect a partition. Then followed language upon which counsel for Kelly and for the curator-ad-hoc rely. The Court said:
“It is significant- that although the relators prayed for absolute ownership and possession, the decree of the court granted them absolute possession of the proceeds of the sale but not absolute ownership. * * * ”
As has already been noted in Succession of Butler, though the children who were present had asked to be “sent into possession and absolute ownership of the estate,” the decre.e of the Supreme. -Court merely ordered that they be sent into “possession.” Counsel say that the Supreme Court, by using this language, clearly meant that had there remained in the estate unsold real estate, the three heirs who were present would have had merely “possession” of it but would not have had “ownership” and therefore could not have disposed of it. We find ourselves unable to agree that the Supreme Court so intended. What the Court did was merely to recognize that, as a result of Article 78, when the children present are sent into possession of that part of an estate which would have gone to an absentee had he been present, they get only “possession” and not full ownership, for if they got full and complete ownership then the absentee who might return would have no right to make any claim at all.
We feel sure that that is all that the Supreme Court meant when, in Dugas v. Powell, it commented on the significance of the language used in the decree in Succession of Butler. It merely meant that though the heirs present could take and use the share of the absentee, still they did not have complete ownership in the sense that they would never have to account to the absentee should he later appear.
It should be noted that if the contention of the respondents should be upheld then real estate in such a situation might be, to some extent, taken out of commerce for in no case could it be sold except as the result of a partition proceeding. And we note also that, should it be sold as a result of a partition proceeding, then unquestionably, as a result of the holding in Succession of Butler, the heirs present could undoubtedly do as they did there — bring a proceeding for the possession of the proceeds of the sale. The only difference would be that in one situation the sale would be for the price agreed upon conventionally, whereas in the other the sale would be for the price brought at the partition sale.
Our conclusion is that, as a result of the proceedings resorted to, Mrs. Bierhorst obtained a good and merchantable title to the property in question.
We note that the District Court, apparently taking into consideration the provisions of LSA-R.S. 13:4240, required that all costs be paid by plaintiff. Under all the circumstances we think this was proper.
Accordingly the judgment appealed from is affirmed. Costs are to be paid by plaintiff-appellee.
Affirmed.