PIAMITER, Justice.
Invoking the provisions of the Uniform Declaratory Judgments Act, LSA-R.S. 13:-4231 et seq., plaintiff, Mrs. Edith Levenberg Bierhorst, seeks in this cause a judgment decreeing that she has an absolute, an unconditional, and a merchantable title to Lots 23 and 24, Square 164, Lake View Subdivision, in the City of New Orleans, together with all buildings and improvements thereon.
Initially, Mrs. Cecile Levenberg (plaintiff's mother), who died at her domicile in the City of New Orleans on October 14, 1933, owned the mentioned lots, as well as other property. Of her marriage to Abraham Levenberg five children had been born, namely Mrs. Miriam Levenberg Panfield, Mrs. Eva Levenberg Yarrut, Jacob Levenberg, Alexander Levenberg, and the plaintiff herein. Decedent left an olographic last will and testament in which she provided for certain particular legacies and bequeathed the balance of her estate to the three daughters and two sons, share and share alike. At the time of the mother’s death the existence of the two sons was unknown, Jacob not having been heard from since his leaving New Orleans in 1919 and no knowledge of Alexander having *937 been heard from since his departure from the same city in 1931.
Plaintiff and her two sisters opened the succession of their mother, they alleging the existence of the brothers to be unknown then as well as when the mother died. Thereafter, on a petition in the succession proceedings, they (as a stipulation of counsel recites) obtained an ex parte judgment “ * * * recognizing the three daughters as the sole legal and instituted heirs and legatees under the law and the will probated in said succession, and sending them into possession, in equal proportions, of the entire remaining estate of the decedent, describing various pieces of real estate situated in the City of New Orleans, including the real estate which is the subject of the present suit.”
Subsequently, plaintiff acquired by a notarial act all of the rights, title and interest of her two sisters in and to the lots involved herein, and a few days later she agreed in writing with Philip M. Kelly to sell such property to him. The sale was never consummated, however, Kelly having taken the position that plaintiff’s title was not merchantable since the interests of Jacob and Alexander Levenberg in the property had not been divested.
This suit for a declaratory judgment followed. Made defendants were Philip M. Kelly (the prospective purchaser) and the absentees (Jacob and Alexander Levenberg), the latter having been cited through an attorney appointed as curator ad hoc to represent them. Answers for all defendants were filed in which they disputed the alleged merchantable title of plaintiff.
After trial the district court rendered judgment in favor of plaintiff declaring and decreeing that her title to the property “is complete, absolute, unconditional and merchantable, and that said Jacob and Alexander Levenberg are without interest in said property * * However, plaintiff was cast for all costs, including the fee of the curator ad hoc which is to be fixed and taxed later in appropriate proceedings.
Defendants appealed to this court. We transferred the appeal to the Court of Appeal, Orleans Circuit, our opinion having been that such tribunal had appellate jurisdiction of the cause. 223 La. 737, 66 So.2d 791. In that court the judgment was affirmed. La.App., 68 So.2d 111. Thereafter, the cause was brought here on a writ of certiorari or review.
The brief of plaintiff’s counsel states: “The sole issue for decision is one of law, namely, did the rights or interests of Jacob and Alexander Levenberg, or either of them, that they had or might have had in and to the succession of their mother, devolve exclusively on petitioner and her two sisters?” Then it is contended and argued on behalf of plaintiff that under and pursuant to LSA-Civil Code Article 77 she and her sisters inherited directly from their mother, in absolute ownership, the interests which would have gone to the absentee brothers had the latter been *939 known to exist at the time of the mother’s death.
The provision of our Civil Code thus relied on appears in Chapter 3 of Title III, the entire four articles of which Chapter (entitled “Of the Effects of Absence upon the Eventual Rights which May Belong to the Absentee”) read as follows:
“Art. 76. Whoever shall claim a right accruing to a person whose existence is not known, shall be bound to prove that such person existed at the time when the right in question accrued, and until this be proved, his demand shall not be admitted.
“Art. 77. In case a succession shall be opened in favor of a person whose existence is not known, such inheritance shall devolve exclusively on those who would have had a concurrent right with him to the estate, or on those on whom the inheritance should have devolved if such person had not existed.
“Art. 78. The provisions of the two preceding articles shall not affect the right of claiming the inheritance and any other rights which the absentee or his representatives or assigns may have; these shall be extinguished only by the lapse of time which is established for prescription.
“Art. 79. As long as the absentee shall not appear, or a suit shall not be brought in his name, those who shall have been put in possession of the inheritance, shall have a right to the proceeds by them received bona fide.”
Before giving consideration to the quoted codal provisions it is well to notice-that Chapters 1 and 2 of the same Title (III), which treat, respectively, “Of the Curatorship of Absentees” and “Of the Putting into Provisional Possession the Heirs of an Absentee”, concern merely the administration and the provisional possession of the estate that belonged to the absentee at the time of his departure. Therein it is specifically stated that the appointed curator or the provisional possessors can neither alienate nor mortgage the absentee’s immovables.
With this in mind we now seek to determine whether LSA-Civil Code Articles 76 through 79 (Chapter 3), which deal with rights (especially of inheritance) falling to an absentee subsequent to his departure, likewise contemplate only possession by the designated beneficiaries during the absence; or whether, as plaintiff contends, the provisions are intended to transmit the absentee’s rights to the substituted persons in absolute and unconditional ownership.
Authority for the holding by others of the absentee’s eventual rights is contained in Articles 76 and 77. The latter article, on which this plaintiff relies, particularly provides for the devolution of his rights of inheritance in a succession and designates the persons on whom they shall devolve. However, to be read in connection with those articles, and which unquestionably qualify and restrict them, are Articles 78 and 79.
*941 The first of these restricting provisions ■convinces us that a transmission in full .and complete ownership of the absentee’s inheritance is not intended by Article 77. In unmistakable language Article 78 reserves to the absentee, his representatives ■or assigns the privilege of claiming it and announces that his rights shall become extinct only by the accrual of the appropriate prescription.
And the remaining article, 79, strengthens our stated conviction. It conclusively discloses that by the legislation under consideration the lawmakers contemplated only possession, as distinguished from absolute ownership. Therein, it is provided that until a claim is formally made by or on behalf of the absentee “those who shall have been put in possession of the inheritance, shall have a right to the proceeds by them received bona fide.” As used in Article 79 the word “proceeds”, seemingly, means “fruits, revenues, produce or income”, not (as plaintiff contends) an amount realized from a conventional sale of the property. It appears in the corresponding Article 138 of the Code Napoleon, from which it is derived, as “les fruits”. Nevertheless, and irrespective of the meaning of that word, if Article 77 were authority for the vesting of absolute ownership in the substituted parties, there would be no need for Article 79; those parties, as absolute owners, would necessarily be entitled to all “proceeds” from the property, whether fruits, income, or money derived from a sale thereof.
Our conclusion is that the interests of Jacob and Alexander Levenberg in and to their mother’s succession were not transmitted (on the death of decedent) in complete ownership to plaintiff and her two sisters; and, hence, that plaintiff’s title to the property involved herein is not absolute, unconditional and merchantable.
The decisions in the several cases cited and discussed by counsel for the respective litigants in no manner militate against our announced conclusion. In none was it held that LSA-Civil Code Article 77 gives, as contended for by plaintiff, the right of absolute ownership to co-hcirs in a situation similar to the one with which we are presently confronted. Only questions respecting the validity of partitions by licitation were involved in Martinez v. Wall, 107 La. 737, 31 So. 1023 and Pfister v. Casso, 161 La. 940, 109 So. 770. In Succession of Williams, 149 La. 197, 88 So. 791 the court merely decreed that the children of an absentee be placed in provisional possession of the latter’s interest in and to his deceased father’s estate. The holding in Succession of Butler, 166 La. 224, 117 So. 127 was that the petitioning heirs were entitled to the absolute possession (not ownership) of the estate of the decedent, including the proceeds of that portion held by a curator for and on behalf of an absent heir. Involved in Succession of Derigny, *943 133 La. 381, 63 So. 56 and 156 La. 142, 100 So. 251, and in Dugas v. Powell, 207 La. 316, 21 So.2d 366, were contests over the estates of the decedents between the real heirs and alleged good faith assignees of putative or apparent heirs.
For the reasons assigned that part of the judgment favoring plaintiff, as rendered by the district court and affirmed by the Court of Appeal, is reversed and set aside and plaintiff’s demands are rejected. As it respects the matter of costs in the trial court the judgment is affirmed. The costs of the Court of Appeal and of this court shall be paid by plaintiff.
HAWTHORNE, dissents from the refusal to grant a rehearing.
MOISE, J., recused.